**Michael G. BECK, Appellant,**

v.

**Steven Lee PATTON, Respondent.**

**No. WD 71377.**

Missouri Court of Appeals,
Western District.

May 4, 2010.

---

Michael G. Beck, Brentwood, MO, pro se.

Robert Herman, St. Louis, MO, Philip E. Prewitt and Zachary H. Armfield, Macon, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

Michael G. Beck ("Beck") appeals the grant of summary judgment entered by the Circuit Court of Livingston County ("trial court") against him and in favor of Steven Lee Patton ("Patton") on an Interpleader action relating to a dispute be-

tween attorneys Beck and Patton over entitlement to attorney's fees earned in a personal injury lawsuit. On July 14, 2009, the trial court entered Judgment granting Patton's Motion for Summary Judgment, ordering payment of the interpleaded funds in the amount of $11,111.00 to Patton, and assessing court costs against Beck. We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## Procedural History and Statement of Facts

Rondi Poppe ("Poppe"), as next friend of Eden Ralston, a minor, signed a contingency fee contract with the law firm of S. Lee Patton, Attorney at Law. Beck, who claims to have a fee-splitting agreement with Patton through their partnership or other *ad hoc* relationship, presented the fee contract to Poppe at her home and served as the witness to her signing of the contingency fee agreement. Poppe filed suit against James A. Green ("Green"), as the result of injuries to Eden Ralston that were claimed to have been negligently caused by Green in a car accident. Poppe later entered into a settlement agreement with Green, which was approved by the trial court in a Judgment and Order Approving Settlement whereby $33,856.97 was designated by the trial court to cover attorney's fees and reimbursement of litigation expenses. The trial court ordered $22,745.97 to be paid to Patton as his uncontested share of attorney's fees and expense reimbursement. The trial court ordered $11,111.00 of contested attorney's fees to be paid into the court registry with Green being granted leave to interplead the contested funds and then to be dismissed from the interpleader proceedings. The interpleader proceeding was necessary due to a dispute between Patton and Beck as to who was entitled to the contested funds in light of an alleged fee-splitting agreement resulting from Beck's claim of a law firm partnership or other *ad hoc* relationship with Patton.[1]

Beck filed an Answer and Cross–Claim to Interpleader, followed by an affidavit and other supporting documentation[2] in which Beck claimed he and Patton had a fee-splitting arrangement through their partnership or other *ad hoc* relationship whereby they agreed to split fees on cases they had worked on together, including the Poppe case. Patton filed Objections and a Motion to Dismiss Beck's Cross–Claim to Interpleader. The trial court overruled Patton's Motion to Dismiss, after which Patton then subsequently filed a Motion for Summary Judgment. In his Motion for Summary Judgment, Patton attached an affidavit and documents in support of the motion, alleging that Beck and Patton were not members in the same law firm and that no written contingency fee agreement had ever been entered into between a client and both Beck and Patton.[3] Beck filed his Answer to Motion for Summary

---

1. We express no opinion as to the status, existence, or validity of any partnership or other *ad hoc* relationship between Patton and Beck for division of attorney fees, other than that this remains a genuine issue of fact on the present state of the record before this Court.

2. One of the supporting documents is a letter addressed to the parents of the injured minor soliciting a phone call from the parents to discuss the minor's injuries, including the comment, "Unlike many law firms, you will always talk to Mike [Beck] or me [Patton], not a secretary or paralegal." Another document was a photograph advertisement of "S. Lee Patton—Attorney At Law" in which there were two lawyers pictured—Beck and Patton. Another document was an e-mail dated October 30, 2007, in which Patton, in response to an inquiry as to who Beck was, responded: "Mike is my partner."

3. Upon remand, any evidence presented to the trial court relating to whether or not Patton had shared fees with Beck in other

Judgment with an affidavit alleging that he and Patton were, indeed, law partners and that they had worked on approximately 250 cases since 2004 under this partnership or other *ad hoc* relationship and fee-splitting arrangement.[4]

Following a hearing, the trial court issued its Judgment granting Patton's Motion for Summary Judgment, ordering payment of the interpleaded funds to Patton, and assessing costs against Beck. It is from this Judgment that Beck timely appeals.

## Standard of Review

Our review of a grant of summary judgment is "essentially *de novo*." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was en-

---

past contingency fee cases where Beck was not listed as a fee-sharing attorney on the fee contract would certainly be relevant to the conflicting claims of Beck and Patton as to what sort of partnership or other *ad hoc* relationship they may have had or operated under leading up to the present contingency fee case.

4. We note that both parties are licensed and practicing attorneys in the State of Missouri and are certainly expected to adhere to Missouri's pleading requirements as it relates to responsive pleadings, motions, and responses to motions. Neither party has proven to serve as a model of technical motion practice or responsive pleading. Patton asserts that an overruled motion to dismiss that he claims was verbally "renewed" relieved him of a responsibility to respond to Beck's cross-claim, and instead, his verbally "renewed" motion to dismiss and written motion for summary judgment served as Patton's "response." Our review of the transcript contained within the Legal File reveals no verbal "renewal" of the motion to dismiss, and were that the case, the "renewed" motion to dismiss would be nothing more than the equivalent of a motion for the trial court to reconsider its prior denial of Patton's first motion to dismiss, a motion that generally has no legal effect since the Missouri Rules of Civil Procedure do not recognize such a motion for reconsideration. *Agnello v. Walker*, 306 S.W.3d 666, 678–79 (Mo.App. W.D.2010); *Hinton v. Proctor & Schwartz, Inc.*, 99 S.W.3d 454, 459 (Mo.App. E.D.2003). Further, Patton's alleged verbal "renewed" motion to dismiss may also violate Rules 55.25(c) and 55.26. At bare minimum, we refer Patton to Rule 55.27(a) ("Motions and pleadings may be filed simultaneously without waiver of the matters contained in either."). Alternatively, Patton argues that the trial court was simply wrong in its ruling on his first motion to dismiss and that this relieved him of a responsibility to respond to Beck's cross-claim, a position that is clearly not supported by the Rules of Civil Procedure. Likewise, Beck erroneously argues that Rule 74.04(c)(2) only requires a response to the motion for summary judgment and not to the attachment of Patton's statement of undisputed facts required by Rule 74.04(c)(1). Thus, both parties necessarily rely upon a liberal construction of their pleadings and responsive pleadings to approach procedural pleading compliance. Liberally speaking, both parties have filed pleadings and responsive pleadings challenging each other's factual and legal conclusions with filings of affidavits, documents, and arguments that, at minimum, place the issue of their law firm partnership or *ad hoc* fee-sharing relationship in dispute. Accordingly, we choose to exercise our discretion to examine the merits of this central dispute between the parties and the impact of that dispute upon today's ruling. Upon remand, we expect that the parties will want to review their technical compliance with the Missouri Rules of Civil Procedure in the continuing litigation.

tered.[5] *Id.* "We accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Summary judgment will only be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Brock v. Blackwood*, 143 S.W.3d 47, 61 (Mo.App. W.D.2004); *see also* Rule 74.04(c).[6]

## Discussion

■■■ Regardless of any other point presented by the parties on appeal, it is incumbent upon Patton, as the summary judgment movant, to demonstrate that there is "*no genuine issue as to any material fact and that [he is] entitled to judgment as a matter of law*." Rule 74.04(c)(6); *see also ITT Comm. Fin. Corp.*, 854 S.W.2d at 381. Beck's Fifth

Point on appeal goes to the heart of this question by asserting that when summary judgment was granted, there remained material issues of fact regarding the relationship between attorneys Beck and Patton as partners or *ad hoc* partners and whether they jointly agreed to represent Poppe under a fee-splitting agreement between the attorneys. Because this issue is dispositive of Beck's appeal, we begin our discussion with this Point.

■■■ Patton relies upon Rule 4–1.5(e) [7] to assert that under no circumstance could Beck be legally entitled to any portion of attorney's fees received by the law firm of S. Lee Patton, Attorney at Law, because Beck's name was not on the firm's letterhead nor otherwise referenced in client contracts.[8] To the contrary, however, af-

**5.** Patton erroneously argues in his brief to this Court that the trial court "is entitled to allocate as much or as little weight to any evidence it chooses" and goes on to claim that, with regard to the affidavits and documents provided to the trial court, the documentation "was considered and weighed as evidence, along with other evidence in the trial court's consideration of the relevant facts." Had the trial court been sitting as a trier of fact in a bench trial, this argument would be relevant. This appeal, however, relates to the trial court's proper examination of the record in determining the propriety of summary judgment. Hence, Patton's arguments are misplaced.

**6.** All rule references are to Missouri Rules of Civil Procedure 2009, unless otherwise indicated.

**7.** All references to Rule 4 are to Missouri *Rules of Professional Conduct 2009.* Rule 4–1.5(e) states: "A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation; (2) the client agrees to the association and the agreement is confirmed in writing; and (3) the total fee is reasonable."

**8.** Patton refers us to a simultaneous proceeding pending before the Circuit Court of St.

Louis County, which involves a suit for accounting between Beck and Patton and in which preliminary discovery rulings as to Beck's membership status in Patton's law firm have been issued for the protection of confidential client information, pursuant to Rule 4–1.6. Presumably, Patton raised this topic to the trial court and to this Court in an attempt to invoke the doctrine of collateral estoppel. The trial court appears to have been persuaded by this argument because immediately before ruling the motion in Patton's favor at the hearing, the trial court stated: "[T]he St. Louis County court made a determination that Mr. Beck was not a member of the firm." However, a party attempting to invoke the doctrine of collateral estoppel is required to show that (1) the issue decided in the prior adjudication mirrors that in the present action; (2) the prior adjudication resulted in a final decision on the merits; (3) the party against whom collateral estoppel may apply participated as a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine may apply has had a full and fair opportunity to litigate the issue. *Miller v. Pool & Canfield, Inc.*, 800 S.W.2d 120, 124 (Mo.App. W.D. 1990). Applied to the present case, aside from a question as to whether the issues presented in the two proceedings mirror each other as they stem from rules promulgated for

ter evidence regarding the alleged relationship between Patton and Beck and their corresponding individual work on the Poppe case is received in the record at a subsequent trial of this matter, if Patton's law firm is determined to consist of some sort of contractual partnership agreement or *ad hoc* partnership arrangement between Patton and Beck, then Rule 4–1.5(e) may be inapplicable to this interpleader action. Rule 4–1.5(e), as it relates to the ethical practice of law, applies only to attorney fee agreements made between associated, yet distinct, attorneys (or law firms) and the client. The rule in no way passes judgment on the legal validity of a law partner's entitlement to a portion of fees received incident to a long-standing or case-by-case partnership agreement between attorneys, particularly if and when both attorneys have expended time and resources on behalf of the particular client.

The record reflects a genuine issue of fact as to the nature of the attorneys' relationship, with Beck asserting that a valid partnership existed between the parties and Patton asserting that the two were never partners or attorneys in the same firm. On appeal from summary judgment, we accord the non-movant the benefit of all reasonable inferences from the record in determining whether a genuine issue of fact remains. *ITT Comm. Fin. Corp.*, 854 S.W.2d at 376. Therefore, we accord Beck the benefit of all reasonable inferences from the record and assume, as Beck has averred in his affidavit filed with the trial court, that the attorneys did have a partnership in the firm of S. Lee Patton, Attorney at Law. This neces-

sary assumption renders Patton's Rule 4 argument null or, at minimum, premature as Rule 4–1.5(e) does not apply to the partnership relationship which Beck claims existed at the time the Poppe fee was earned. *See Welch v. Davis*, 114 S.W.3d 285, 290 (Mo.App. W.D.2003) (holding that Rule 4–1.5(e) did not impose qualifications on the right to divide a legal fee between attorneys who "held themselves out to their clients and practiced together as a single, collective business entity").

Beck asserts, and Patton denies, that the attorneys had a partnership in which they agreed to split all fees from cases handled jointly by Beck and Patton under the umbrella of the law firm of S. Lee Patton, Attorney at Law, on a two-thirds to one-third ratio, with Patton receiving the larger amount. This arrangement, Beck claims, specifically relates to the Poppe case and resulting attorney's fee. In short, the nature, scope, and validity of the partnership or fee-splitting agreement between the parties, if any existed, is left entirely unsettled. If Beck's claim of the existence of a law partnership or other *ad hoc* relationship and a corresponding attorney fee-sharing agreement with Patton is true, then Beck may have a contractual claim of entitlement to the interpleaded funds to the exclusion of Patton. So long as there exists a potentially valid entitlement to the attorney's fee by Beck, summary judgment by the trial court was improper.

There is nothing in the record before this Court which settles the issue of Beck's or Patton's entitlement to the interpleaded funds in anything approaching a conclusive

---

very different purposes, it is undisputed that a discovery order is an interlocutory order and is not a final adjudication, as it leaves further questions for future determination in that proceeding. *See State ex rel. Great Am. Ins. Co. v. Jones*, 396 S.W.2d 601, 603 (Mo. banc 1965). A judgment is final only when it disposes of all issues for all parties in the case and leaves

nothing for future determination. *Norwine v. Norwine*, 75 S.W.3d 340, 343–44 (Mo.App. S.D.2002). Accordingly, any reliance upon the doctrine of collateral estoppel as it relates to an interlocutory discovery order in a simultaneous legal proceeding between the parties is misplaced.

way. Whether or not Beck and Patton had an enforceable fee-splitting agreement with regard to the Poppe attorney's fee remains a disputed question of fact. There are allegations and documents, including email exchanges, pictures, and advertisements, in the record which, when viewed in the light most favorable to Beck, indicate that Beck and Patton were both holding themselves out to their clients and actually practicing as a single, collective legal business entity, partnership, or other *ad hoc* relationship and that there was some sort of fee-sharing agreement or relationship between these attorneys in their past dealings and which may have been applicable to the Poppe case. However, the extent of this relationship, including any agreement as to the division of fees is simply unascertainable from the record as it currently stands.[9] As this genuine issue of material fact exists in the present state of the record and carries with it legally probative force as to the just and proper release of the interpleaded funds, the trial court erred in granting summary judgment in favor of Patton.

### Conclusion

The Judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

VICTOR C. HOWARD, and ALOK AHUJA, JJ., concur.

9. We offer no opinion today as to whether Beck and Patton had any sort of enforceable fee-splitting agreement between each other or had otherwise made promises to one another regarding a fee-splitting arrangement on the Poppe case. We do note that in the event of any substantive, procedural, informal, or formal promises that may have been made between the two party attorneys below, "in commerce between attorneys, attorneys must rely on the integrity of one another, and that promises made are to be promises kept." *Neilson v. McCloskey*, 186 S.W.3d 285, 287–88 (Mo.App. E.D.2005). We trust that both party attorneys below are making every effort to comply with their legal and ethical responsibilities to the profession and to each other.