Mary L. **FRANKLIN**, as a Class Representative, Jacqueline Dyer, James Irwin and Barbara Washington, as Individuals and as Representatives of a Class, Plaintiffs/Respondents,

v.

**ST. LOUIS BOARD OF EDUCATION**, Defendant/Appellant.

No. 67471.

Missouri Court of Appeals, Eastern District, Division Two.

June 27, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 14, 1995.

Application to Transfer Denied Sept. 19, 1995.

Kenneth C. Brostron, Mark J. Rubinelli, Daniel K. O'Toole, Lashly & Baer, St. Louis, for appellant.

Hugh R. Law, Lowenhaupt & Chasnoff, LLC, St. Louis, for respondents.

SMITH, Presiding Judge.

The St. Louis Board of Education (Board) appeals the circuit court's entry of partial summary judgment against it and in favor of employees of the St. Louis City Schools (teachers). The circuit court granted partial summary judgment in favor of the teachers and entered a declaratory judgment that they are entitled to sick leave pay for their day of mass absence from work on December 18, 1990. It also denied the Board's cross motion for summary judgment. We affirm in part, reverse in part and remand.

In the summer and fall of 1990 The St. Louis Teachers' Union Local 420, AFT, AFL–CIO (union) engaged in contract negotiations with the Board. The negotiations "weren't going well" from the union's standpoint. Teachers were "frustrated" over the status of contract negotiations. As a result, in the late fall and early winter of 1990 union members started preparing for the "possibility of a strike." Missouri law prohibits strikes by public school personnel. *St. Louis Teachers Association v. Board of Education of City of St. Louis*, 544 S.W.2d 573 (Mo.banc 1976) [1]; § 105.530 RSMo 1994. On December 18, 1990, some 1192 teachers, roughly one-third of all city teachers, were absent from work. The number of absent teachers was greater than the combined number of absences for the previous eleven days of that month. Principals requested 1190 substitutes on December 18, however only 118 were available. This severely interrupted student instruction in many schools.

On December 19, 1990, Mr. David Mahan, the Interim Superintendent of Schools (superintendent), issued a letter to all absent employees informing them that he would require "appropriate, written substantiation ..., i.e., statement from a physician, bereavement form, or other documentation" of their reason for absence on December 18 as a precondition to payment for that day. The letter required absent teachers submit their substantiation within thirty days.

Many teachers did not comply with the terms of the December 19 letter and, therefore, were not paid for their day of absence. The union filed grievances on behalf of those teachers who had provided no medical documentation. Assistant superintendents denied the grievances. The union then appealed to the superintendent, who also denied the grievances.

The union president and three members of the union brought this action on behalf of the class of absent teachers who failed to provide medical substantiation of their reason for absence. They sought a "declaration of rights to payment for the sick day in question." The Board raised affirmative defenses of estoppel by waiver of their opportunity to substantiate their claim, failure to exhaust administrative remedies, failure to exhaust contractual remedies, and unclean hands. Both the teachers and the Board filed motions for summary judgment. The parties and the court treated the case as one where medical verification was required.

The circuit court denied the Board's motion, and granted the teachers' motion in part. Board Regulation No. 5236 authorizes the superintendent to require medical substantiation from those employees absent for five consecutive days and those who have had ten previous absences during the year. The Circuit Court found that the superintendent had no power to order medical substantiation

from those missing less than five consecutive days or ten total days. Furthermore, it found that none of the affirmative defenses offered by the Board were viable. Accordingly, it denied the Board's motion for summary judgment, and granted the teachers' motion for summary judgment as to all teachers with less than five consecutive absences or ten previous absences. The judgment provided:

"... respondent Board acted contrary to its Policy Statement and published collateral regulations and practices in denying paid sick leave to members of the established class here on 18 December 1990, and that said members as further defined below are entitled to be paid for sick leave for said date, with interest from said date to date of payment. Respondent Board is hereby ordered to prepare a calculation of such sums and a list of such persons entitled thereto ... and to pay over to such persons the aforesaid funds."

The court denied relief to the remaining teachers and they have not appealed the judgment.

The Board does appeal, alleging that the court's partial granting of the teachers' motion for summary judgment was in error and that its denial of the Board's motion for summary judgment was also in error.

■ We first address the Board's claim that the court lacked jurisdiction because of the teachers' failure to exhaust available administrative remedies. It is evident that the teachers began the grievance process under Section A, Article V. of the Policy statement of the St. Louis Board of Education in Relation to Working Conditions (Policy Statement) by filing grievances with the assistant superintendents, and then filing appeals with the superintendent. Policy Statement, § A, Art. V., A., 3–4. The teachers did not proceed to the final stage permitted by the Policy Statement, non-binding arbitration:[1]

In the event the matter is not resolved to the satisfaction of the employee, through the preceding steps, then either party, within ten (10) working days, may appeal from the decision of the Superintendent of Schools to an impartial arbitrator selected as hereinafter provided for an advisory opinion.

Policy Statement, § A, Art. V., A., 5. The teachers had a remedy available through arbitration, which they chose not to pursue.

However, a recent Missouri Supreme Court case makes it clear that the doctrine of exhaustion of remedies does not apply to a noncontested case. *Strozewski v. City of Springfield,* 875 S.W.2d 905 (Mo.banc 1994) [1–5]. The instant grievance procedure, while formal in some respects, does not meet all of the formal requirements for a contested case outlined in §§ 536.063—536.090 RSMo 1994. Therefore, the doctrine of exhaustion of remedies does not apply.

Regulation No. 5236 reads, in part:

... Sick leave absences which require home confinement or hospitalization of more than 10 total days during any school work year ... shall, if the circumstances so warrant, be verified in writing by a physician and submitted to the Personnel Services Division for filing with the employee's record. This requirement is not intended to affect or eliminate the present requirement that employees, due to personal illness for five consecutive working days, must submit a physician's statement verifying the need for sick leave. (See Regulations 5072 and 5162). Fractions of a day shall be counted in computing total days of absence.

\* \* \* \* \* \*

In determining whether the circumstances warrant disciplinary action or a physician's verification, the appropriate school official or hearing body shall take into consideration the fact that the employee has suffered a recurrent or long-term disabling illness, whether a significant number of absences were for legitimate reasons (such as the death of a relative, illness of a member of the immediate family, etc.), the total number of occasions involved, and all other relevant considerations....

Employee absence must always be kept to a minimum and should occur only for

---

1. Non-binding or advisory arbitration is an oxy-

moron.

legitimate reasons as set forth in the regulations.

The circuit court interpreted this regulation to grant the superintendent the power to require a physician's verification *only* if an employee has been absent five consecutive days, or more than ten total days in the working year.

■ This interpretation is correct. The regulation does, indeed, authorize verification of absences of five consecutive days or more than ten total days. It recognizes the fact that human beings frequently suffer from illnesses such as colds, flu, or intestinal distress, which are debilitating only briefly and which do not usually require medical attention. It, therefore, does not require medical verification of short term illness except for those frequently ill. It does not expressly deny the superintendent the power to substantiate and verify other absences. In fact, the regulation states that absences must "*always* be kept to a minimum and should occur only for *legitimate reasons*." (emphasis supplied). This provision of Regulation No. 5236 is a general prohibition of all illegitimate absences, which the superintendent has a duty to enforce. The superintendent also has an implied power to take reasonable measures to ensure the normal and uninterrupted education of children. The superintendents of metropolitan districts possess "general supervision powers over the school system." *Webb v. Reisel,* 858 S.W.2d 767 (Mo.App.1993) [l.c. 769]; § 168.211.2 RSMo 1994.

The superintendent's implied power as general supervisor and the highly suspicious circumstances surrounding the absenteeism of December 18 justified some investigation on his part to determine which absences occurred for "legitimate reasons" under Regulation No. 5236. Requiring some form of written explanation of the teachers was reasonably related to that end. The written explanation which was chosen was, however, beyond his authority under the regulation. It consisted of a retroactive requirement of medical examination and verification not mandated under the regulation for absences of less than five days by an employee with fewer than eleven absences during the year.

Whether the employee was sick on December 18 or not, such verification would be difficult, if not impossible, to obtain after the fact. The required explanation precluded sick leave not only for teachers illegitimately absent but for those legitimately absent, approximately 10% of the absent teachers based on prior experience. *See Godbey v. Roosevelt School District No. 66 of Maricopa County,* 131 Ariz. 13, 638 P.2d 235 (App. 1981).

■ The trial court's decree, however, was erroneous in ordering payment to the established class. The class was authorized by virtue of Rule 52.08 and specifically (b)(2) of that Rule in that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ..." The appropriate relief here, as to the class, is a declaration that under Regulation 5236 the Superintendent may not require medical substantiation for such leave for those teachers absent only on December 18 with less than 11 absences for the year.

Sick leave is for a specific purpose and if the absence is not one for which sick leave is intended it may be disallowed. Each individual requesting payment for sick leave does so on the basis of a specific condition or occurrence. The Superintendent has the authority to request documentation to support the request. Under the regulation that documentation does not include medical verification, but it may encompass more than simply the unverified request for payment as for example an affidavit that the teacher was indeed ill on December 18, and was not absent because of the labor dispute or other personal activities. As to each employee a separate issue of fact of entitlement to sick leave exists which cannot be resolved by summary judgment. It is the burden of each employee to establish that the absence on December 18, 1990, was the result of a reason for which sick pay can be claimed.

The judgment of the court declaring that Regulation 5236 does not authorize the Superintendent to require medical verification from employees claiming sick pay for ab-

sence on December 18, 1990 (who are not specifically required to provide medical verification under the regulation) is affirmed. In all other respects, the judgment is reversed and the cause remanded for further proceedings.

WHITE, J., concurs.

PUDLOWSKI, J., dissents in separate dissenting opinion.

PUDLOWSKI, Judge, dissenting.

I respectfully dissent. The majority opinion cites the law properly, but misinterprets the facts.

The majority opinion agrees with this originally assigned writer's opinion on the pertinent legal precedential authority. The majority opinion recognizes that Regulation No. 5236 contains "a general prohibition of all illegitimate absences which the superintendent has a duty to enforce." Op. at 436. It also recognizes the superintendent's implied power "to take reasonable measures to ensure the normal and uninterrupted education of children." *Id.* Therefore, the majority found, "[t]he superintendent's implied power as general supervisor and the highly suspicious circumstances surrounding the absenteeism of December 18 justified some investigation on his part to determine which absences occurred for 'legitimate reasons' under Regulation No. 5236." *Id.* Specifically, the majority found "[t]he Superintendent has the authority to request documentation to support the request." *Id.* at 436.

I would find that the superintendent's request by letter falls within these legal parameters established by the majority. The letter requires "appropriate, written substantiation ..., i.e., statement from a physician, bereavement form, or other **documentation.**" *Id.* at 434. If, according to the majority, the superintendent "has the authority to request **documentation,**" then, in my opinion, his letter requesting documentation would be within his authority.

Curiously, the majority does not reach this conclusion. Rather, it concludes that the form of written explanation required by the superintendent was "beyond his authority under the regulation." This is based upon the erroneous determination that "[i]t consisted of a retroactive requirement of medical examination and verification ... [which] would be difficult, if not impossible, to obtain after the fact." This is only partially what the superintendent's letter requested. It did suggest "a statement from a physician" would satisfy the written verification requirement; however, this was not a mandatory requirement. The letter states that one could provide a "statement from a physician ... or other documentation." The teachers had the option to provide either.

The majority now wishes to remand to make the teachers produce **"documentation ... for example an affidavit"** for the court. In my opinion, documentation has already been properly requested by the superintendent and none was produced. It is incongruous to allow the teachers to produce documentation more than four years after they ignored the superintendent's December 19, 1990, request to produce documentation. I would reverse the order of the circuit court and grant summary judgment in favor of the Board.