In the Missouri Court of Appeals
Eastern District
**DIVISON FOUR**


| | | |
|---|---|---|
| THOMAS L. BEAUCHAMP, II, DANA BUCKLEY, CRAIG SULLIVAN and PROFESSIONAL FIREFIGHTERS OF EASTERN MISSOURI, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 2665, | )<br>)<br>)<br>)<br>)<br>) | No. ED102269 |
| | ) | Appeal from the Circuit Court of St. Louis County |
| | ) | |
| Respondents, | ) | |
| | ) | Honorable Mary E. Ott |
| vs. | ) | |
| | ) | |
| MONARCH FIRE PROTECTION DISTRICT, ROBIN HARRIS, JANE CUNNINGHAM and STEVE SWYERS, | )<br>)<br>)<br>) | |
| | ) | |
| Appellants. | ) | Filed: October 13, 2015 |

***Introduction***

The Monarch Fire Protection District and its Board of Directors (collectively, Monarch) appeal the judgment granting the petition for writ of mandamus and application for injunction filed by Thomas Beauchamp, Dana Buckley, Craig Sullivan, and the Professional Firefighters of Eastern Missouri, Local 2665 (collectively, Petitioners). Monarch claims the trial court erred in issuing the writ of mandamus and permanent injunction because: (1) Petitioners failed to demonstrate that Monarch had a "clear, unequivocal, ministerial duty to promote an employee to captain"; (2) the trial court improperly relied upon extrinsic evidence in construing the parties' collective bargaining agreement; (3) Petitioners failed to establish the existence of a vacant

captain position; and (4) Petitioners had adequate, alternative remedies and they failed to demonstrate the likelihood of irreparable harm. We reverse and remand.

*Factual and Procedural Background*

Monarch and the Professional Firefighters of Eastern Missouri, Local 2665 of the International Association of Fire Fighters (Union) entered a collective bargaining agreement (CBA), which governed the parties' employment relationship. Pursuant to RSMo. Section 105.520, Monarch enacted Ordinance No. 28 adopting the terms of the CBA.

Section 2.01 of the CBA, entitled "Management Rights," provides:

> The Union recognizes that all management functions not specifically limited by this agreement are vested exclusively in the District. Such functions include, but are not limited to, the direction of the working force; the utilization of employees on any work assignment whether connected to their customary job or not; the right to hire, discipline, transfer, promote, demote, layoff, and discharge employees; to determine the number or complement of employees required at any work location, or on any job; to set work schedules or change schedules already set; to control overtime and the necessity of an employee working overtime; to make and implement reasonable rules and regulations; and do all other management and operation of the District.
>
> Any of the management's rights, powers, functions, or authority which the District had prior to the signing of this agreement with the Union are retained by the District, except as to those rights, powers, functions, or authority which are specifically and expressly abridged or modified by this agreement.

(emphasis added). Section 2.06 of the CBA, entitled "Filling Temporary Vacancies and Promotions," governs Monarch's promotional process. Under Section 2.06, promotions to fire captain positions "shall be taken sequentially from a promotional list." After specifying the procedure for testing and ranking candidates eligible for promotion, Section 2.06 states:

> This system shall provide the Fire Chief a list of eligible candidates. Permanent positions shall then be filled from the top three (3) candidates on the list. Acting positions shall be similarly filled by individual shift. The Fire Chief shall recommend, to the Board of Directors, one of the top three (3) candidates on the current list for permanent promotion. If for any reason, a candidate is passed over, that candidate is entitled to an explanation as to why

2

> he was passed over and what would be necessary to improve his skills in order to qualify.

The CBA requires Monarch to create a new promotional list every two years.

Section 2.09 of the CBA sets forth Monarch's six-step grievance procedure. The CBA defines the term "grievance" to mean "any actual complaint, dispute or difference between the employer and an employee or group of employees in the bargaining unit concerning an alleged violation, interpretation or application of this Agreement . . . ." The CBA requires that "[a]ll grievances shall be settled" pursuant to its six-step procedure.

On September 25, 2013, Captain Bob Church announced his decision to retire, and Fire Chief Tom Vineyard recommended the Board of Directors (Board) promote Beauchamp to Capt. Church's position. At that time, Beauchamp, Buckley, and Sullivan were the top three candidates on the 2011-2013 promotional list, which was due to expire in November 2013. The Board did not act upon Chief Vineyard's recommendation but instead "tabled" the filling of Capt. Church's vacant position.

On October 25, 2013, Beauchamp, Buckley, and Sullivan filed grievances with the Union alleging that the CBA required the Board to promote one of them to the vacant captain position. Five days later, Beauchamp, Buckley and Sullivan filed a petition for writ of mandamus compelling Monarch "to immediately promote one (1) of the three (3) Relators to the vacant Captain position."[1] In addition, the three employees filed an "application for a temporary restraining order, with notice pursuant to Rule 92.02(b) and preliminary and permanent injunction" requesting the trial court enjoin Monarch "from conducting any further promotional

---

[1] On October 31, 2013, Beauchamp, Buckley, and Sullivan amended the petition for a writ of mandamus and application for temporary restraining order to add the Union as a party.

3

testing, from promoting any candidates, other than Petitioners, to the vacant Captain's position, and from allowing the current promotional list to expire[.]"

Monarch filed a response to the petition for writ of mandamus arguing, *inter alia*, that: (1) Petitioners failed to state a claim upon which relief may be granted; (2) Petitioners failed to exhaust the grievance procedure contained in the CBA; (3) under the CBA and RSMo. Sections 321.200 and 321.220, Monarch retained "the sole right to determine how many Captains it will employ, as well as the sole right to determine if/when a need to promote an employee to Captain exists"; (4) Petitioners improperly requested the trial court adjudicate contractual rights; and (5) Petitioners had an adequate remedy at law. The following day, the parties entered a consent order, pursuant to which the parties agreed that Monarch: (1) "will not promote anyone into the position of captain, other than Beauchamp, Buckley or Sullivan"; and (2) "may continue the process of developing, testing, etc. for the 2013-2015 captain's list, but will not prepare, create, or publish this list."

On November 12, 2013, the trial court heard evidence on the petition for a writ of mandamus and application for preliminary and permanent injunction.[2] At the hearing, Petitioners presented the CBA, the 2011-2013 promotional list, and the testimony of numerous Monarch employees who described staffing at Monarch's fire houses, the competitive testing process, and Monarch's past promotional practices. In regard to the potential harm faced by Petitioners, a captain from the department affirmed that "[i]f the promotional process is permitted to continue and a new list is created prior to the District promoting one of the three Petitioner/Relators, Beauchamp, Buckley, or Sullivan, [it is] possible that they may no longer hold the top three spots on the promotional list." Chief Vineyard testified that he believed the

---

[2] At the start of the hearing, the parties "agree[d] to consolidate the preliminary and permanent injunction matter[s]."

vacant captain position should "be filled as soon as possible" because "there's a great value in consistency" in staffing work shifts and "in having qualified individuals that are filling those positions."[3] On cross-examination, Beauchamp, Buckley, and Sullivan affirmed that they each had filed grievances that were pending before the Board. On November 13, 2013, the trial court entered an order directing the parties to submit memoranda of law and stating that the October 31, 2013 consent order "remain in force and effect until the court has ruled on the Writ and Requests for Preliminary and Permanent Injunction."

On November 20, 2013, the Board issued a "Step Four Decision" denying the Petitioners' grievances. In its decision, the Board stated that the grievances were untimely and, even if they were timely:

> no contract violation has been presented by the grievants/union. Nothing in the CBA requires the District to replace Captain Church with another Captain. Nothing in the CBA requires the District to employ any particular number of employees and/or Captains. In fact, Section 2.01 gives the District the exclusive right to "promote" and "determine the number or complement or employees required at any work location, or on any job.

The Board concluded: "These grievances are now eligible to be moved to Step Five (non-binding arbitration) if the union requests arbitration within fourteen days of this decision." The Union did not request the non-binding arbitration provided in Step Five. After the expiration of the fourteen-day period, Monarch unsuccessfully moved the trial court to reopen the record to admit a copy of the Step Four Decision.[4]

In July 2014, the trial court issued its order and judgment granting the Petitioners' request for a writ of mandamus and permanent injunction. The trial court reasoned that mandamus was

---

[3] Chief Vineyard elaborated that "as a fully promoted Captain, obviously you gain the experience, you gain the knowledge, you gain the skill set as you – as you move forward. And I think that's a benefit to the community as well as the District."

[4] The record on appeal does not reveal whether the trial court ruled upon Monarch's motion to reopen the record.

appropriate because the CBA "imposes upon the District and the Board the unequivocal and clear duty to promote one of the realtors to the vacant Captains position by use of the process and mechanism described in the CBA and specifically § 2.06."[5] According to the trial court, the "provisions of section 2.06 of the CBA do not provide discretion to the District or its Board in the operation of the mechanism of promotion[.]" The trial court denied that its findings required interpretation of the CBA and stated that, "[t]o the extent that the provisions of the CBA do not specifically articulate a timeframe for [promotions], a reasonable time will be applied by the court."

In regard to the application for a permanent injunction, the trial court found that the Petitioners:

> will suffer irreparable harm including as the evidence supports[:] 1.) the loss of opportunity vis a vis their individual test performance and the applicant pool as it currently exists, 2.) the loss of a fairly and equitably applied promotion process, 3.) the loss of the firefighter's [sic] confidence that they can rely on the terms and conditions of the CBA, 4.) the loss of necessary personnel in the Fire Department under the District's control, and 5.) the resulting loss of adequate fire protection by the citizens that the District serves.

In addition, the trial court concluded that monetary awards were "inadequate to meet the immediate and irreparable harm present in this instance" and "do not address the germane matters at issue." Monarch appeals.

### Standard of Review

The parties agree that the appropriate standard for reviewing the trial court's entry of the writ of mandamus and injunction is the same as any court-tried, civil matter. "In a court-tried case, the judgment of the trial court will be sustained unless there is no substantial evidence to

---

[5] The trial court did not address the significance of Section 2.01's reservation of management's right to "determine the number or complement of employees required at any work location, or on any job."

6

support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." King-Willmann v. Webster Groves Sch. Dist., 361 S.W.3d 414, 416 (Mo. banc 2012) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)). We review questions of law *de novo*. Chastain v. Kansas City Mo. City Clerk, 337 S.W.3d 149, 154 (Mo.App.W.D. 2011).

*Discussion*

In its fourth point relied on, Monarch contends that the trial court erred in issuing the writ of mandamus and permanent injunction because Petitioners had adequate remedies at law.[6] More specifically, Monarch asserts that mandamus and injunctive relief were inappropriate because: (1) the CBA provided a grievance procedure, which Petitioners failed to exhaust; (2) Petitioners "had available a monetary remedy"; and (3) Petitioners failed to demonstrate irreparable harm.[7] In response, Petitioners assert that the writ of mandamus and permanent injunction were appropriate because Petitioners "were not required to exhaust their administrative remedies, did not have an adequate remedy at law, and adduced substantial evidence supporting the trial court's determination that [Petitioners] would be irreparably harmed."

1. *Writ of Mandamus*

"There is no remedy that a court can provide that is more drastic, no exercise of raw judicial power that is more awesome, than that available through the extraordinary writ of

---

[6] Because Monarch's fourth point relied on is dispositive of the appeal, we address it first.

[7] In their point relied on, Monarch also claims the trial court erred in denying its motion to reopen the record to admit the Board's Step Four Decision. However, Monarch failed to develop this argument or cite any legal authority in support of its position. "To properly brief a case, an appellant is required to develop the issue raised in the point relied on in the argument portion of the brief." Carlisle v. Rainbow Connection, Inc., 300 S.W.3d 583, 585 (Mo.App.E.D. 2009). "If a party does not support contentions with relevant authority or argument beyond conclusory statements, the point is deemed abandoned." Id.

mandamus." State ex rel. Kelley v. Mitchell, 595 S.W.2d 261, 266 (Mo. banc 1980). The purpose of a writ of mandamus is to "compel the performance of a ministerial duty that one charged with the duty has refused to perform." Lemay Fire Prot. Dist. v. St. Louis County, 340 S.W.3d 292, 294 (Mo.App.E.D. 2011) (quoting State ex rel. Pub. Counsel v. Pub. Serv. Comm'n, 236 S.W.3d 632, 635 (Mo. banc 2007)). A petitioner seeking mandamus must allege and prove that he or she has a "clear, unequivocal, specific right to have the act performed as well as a corresponding present, imperative, and unconditional duty on the part of the respondent to perform the action sought." State ex rel. Lee v. City of Grain Valley, 293 S.W.3d 104, 109 (Mo.App.W.D. 2009) (emphasis omitted) (quotation omitted). "[T]he purpose of mandamus is to execute and not to adjudicate; it coerces performance of a duty already defined by law." State ex rel. City of Crestwood v. Lohman, 895 S.W.2d 22, 27 (Mo.App.W.D. 1994).

"It is a long-established principle of law that mandamus does not issue where there is another adequate remedy available to relator." State ex rel. Kelley, 595 S.W.2d at 265. In other words, "the writ of mandamus is to be used only as a last resort on the failure of any adequate alternative remedy." Id. at 267. For this reason, "[m]andamus is not an available remedy for an alleged breach of contract." State ex rel. Capitol Queen & Casino, Inc. v. Mo. Gaming Comm'n, 926 S.W.2d 55, 58 (Mo.App.W.D. 1996) (quoting State ex rel. Bates v. Am. Polled Hereford Ass'n, 863 S.W.2d 350, 353 (Mo.App.W.D. 1993)). See also State ex rel. Porter v. Hudson, 126 S.W. 733, 740 (Mo. 1910) ("[Mandamus] does not go where there is any other adequate remedy, and it never issues to enforce a right resting merely on a contractual obligation[.]").

In their petition for a writ of mandamus, Petitioners alleged that Monarch had a "clear, unequivocal, ministerial duty to appoint one (1) of the top three (3) ranked candidates from the promotional list to the vacant Captain position, *as set forth in the CBA*." (emphasis added)

8

Petitioners did not allege that they had no adequate, alternative remedy to a writ of mandamus compelling Monarch to promote one of the top three candidates from the 2011-2013 list. To the contrary, at the hearing on the petition for a writ of mandamus and application for a permanent injunction, Beauchamp, Buckley, Sullivan each testified to filing grievances as provided for in the CBA.

In its judgment granting the writ of mandamus, the trial court found that Monarch had an "unequivocal and clear duty to promote one of the [Petitioners] to the vacant Captain position by use of the process and mechanism described in the CBA and specifically in § 2.06" and that the CBA did "not provide discretion to the District or its Board in the operation of the mechanism of promotion articulated therein." In regard to alternative remedies, the trial court stated simply: "The award of back-pay and other monetary remedies at law, suggested by [Monarch] as adequate and available to [Petitioners] are in fact proven . . . inadequate to meet the immediate and irreparable harm present in this instance, as such monetary awards do not address the germane matter at issue." The "germane matter[s]" identified by the trial court included the potential loss of: opportunity for promotion; employees' confidence in the CBA; and adequate personnel and fire protection. The trial court did not address whether the CBA's six-step grievance procedure constituted an adequate, alternative remedy to a petition for a writ of mandamus.

Monarch maintains that Petitioners had available the adequate, alternative remedies of the grievance procedure set forth in the CBA and/or an action for breach of contract. In their response brief, Petitioners do not deny that the CBA's grievance procedure was an adequate,

9

alternative remedy.[8]  However, at argument, counsel for Petitioners suggested that the grievance procedure was inadequate because it required "non-binding arbitration."

Petitioners cite and we find no authority for the proposition that an agreement to resolve a grievance in non-binding arbitration is necessarily an inadequate remedy.[9]  It is undisputed, however, that Petitioners filed grievances with the Union and processed their grievances through Step Four.  The fact that Petitioners initiated the CBA's grievance procedure tends to suggest its adequacy.  See State ex rel. Kelley, 595 S.W.2d at 267 (alternative remedy to writ of mandamus was available where, by filing action for a declaratory judgment, appellant "demonstrated his willingness to submit the controversy . . . to the judgment of the court.").

In any event, we need not determine whether the CBA's six-step grievance procedure constituted an adequate, alternative remedy because other remedies were available to Petitioners.  For example, declaratory judgment may be a proper remedy to determine parties' rights and obligations under a collective bargaining agreement.  See Brackett v. Easton Boot & Shoe Co., 388 S.W.2d 842, 843 (Mo. 1965).  In addition, Petitioners could have filed an action for either an actual or anticipated breach of the CBA.  When asked at argument why Petitioners did not file an action for breach of contract, counsel for Petitioners, answered "because the clock was ticking for these three [petitioners] . . . if we file for breach of contract, how much time goes by?"

---

[8]  Rather, Petitioners argued that they were not required to exhaust this remedy because "the review conducted by the trial court was of an administrative decision in a non-contested case."  Petitioners further argued that they did, in fact, exhaust their administrative remedies.

[9]  This court has noted that "[n]on-binding or advisory arbitration in an oxymoron."  Franklin v. St. Louis Bd. of Educ., 904 S.W.2d 433, 435 n.1 (Mo.App.E.D. 1995).  In Franklin, we did not consider whether a grievance procedure culminating in non-binding arbitration constituted an adequate legal remedy.  The issue in that case was whether the grievance procedure contained in the parties' collective bargaining agreement satisfied the requirements for a contested case so that the doctrine of exhaustion of remedies applied.  Id.

10

Inconvenient delay does not render an alternative remedy inadequate. State ex rel. Kelley, 595 S.W.2d at 268. "As the Missouri Supreme Court observed, mandamus is not a 'short cut for the speedy resolution of disputes that adequately may be resolved by other means.'" State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc., 966 S.W.2d 399, 402 (Mo.App.E.D. 1998) (quoting State ex rel. Kelley, 595 S.W.2d at 268). Furthermore, "[m]andamus is not an available remedy to obtain relief for an alleged breach of contract." State ex rel. St. Joseph Hosp. v. Fenner, 726 S.W.2d 393, 395 (Mo.App.W.D. 1987) (petitioner's allegations of a contractual relationship and expectancy of future privileges "do not support the use of mandamus.").

Given that, here, Petitioners are attempting to enforce rights resting "merely on a contractual obligation" and had available other remedies, we conclude that the trial court erred in granting the extraordinary remedy of mandamus relief. Point IV is granted as to the writ of mandamus.

*2. Permanent Injunction*

Monarch also contends that the trial court erred in issuing "the companion Injunction" because Petitioners "had available a monetary remedy and no substantial evidence supported the trial court's finding that [Petitioners] would be irreparably harmed." In response, Petitioners assert that injunctive relief was appropriate because they presented evidence of "the amount of time necessary for an employee to adequately prepare" for the promotional test and the possibility that, absent an injunction, Beauchamp, Buckley, and Sullivan "could have lost their position as the top three (3) candidates eligible for promotion." Petitioners further argued that monetary relief would not remedy the "unascertainable damages that would have been suffered by [Petitioners] had [Monarch] moved forward in beginning the new promotional process . . . ."

11

As an initial matter, we note that Monarch's brief focuses almost exclusively upon the writ of mandamus and only superficially develops an argument in regard to the permanent injunction. The sole case Monarch cites in support of its argument, Walker v. Hanke, 992 S.W.2d 925 (Mo.App.W.D. 1999), is of no assistance. Likewise, Petitioners' argument in support of the permanent injunction is conclusory and unsupported by relevant authority.

Despite the absence of relevant case law from either party, we note that, like a writ of mandamus, an "injunction is an extraordinary and harsh remedy and should not be employed where there is an adequate remedy at law." Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011) (quotation omitted). To obtain a permanent injunction, a party must demonstrate that: (1) he or she has no adequate remedy at law; and (2) irreparable harm will result if the injunction is not granted. City of Greenwood v. Martin Marietta Materials, Inc., 311 S.W.3d 258, 265 (Mo.App.W.D. 2010). "An injunction will not be awarded where there is an adequate remedy at law." Eberle v. State, 779 S.W.2d 302, 304 (Mo.App.E.D. 1989).

As discussed above in regard to the writ of mandamus, the record contains no evidence of the lack of an adequate remedy at law. We therefore conclude that Petitioners failed to satisfy the burden of proving they were entitled to a permanent injunction and the trial court erred in granting such relief. Point granted as to the permanent injunction.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded.

_____
Patricia L. Cohen, Judge

Sherri B. Sullivan, P.J., and
Kurt S. Odenwald, J., concur.