

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, EX REL., ERIC S. SCHMITT, ATTORNEY GENERAL AND MISSOURI DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | WD82850 |
| ZILL, INC., | ) ) | Opinion filed: June 9, 2020 |
| Respondent. | ) ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE SANDRA MIDKIFF, JUDGE**

Division Three: Anthony Rex Gabbert, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

The Missouri Department of Natural Resources ("DNR") appeals the judgment of the

Circuit Court of Jackson County denying injunctive relief and civil penalties in a lawsuit brought

by DNR against Zill, LLC ("Zill"), the owner and operator of a gas station in Kansas City, for an

alleged petroleum spill. Finding no error, we affirm.

**Factual and Procedural Background**

In January 2015, residents living near 31st Street and Cleveland Avenue in Kansas City,

Missouri, complained of a strong odor of petroleum vapors in their homes. DNR investigated and

found the presence of liquid petroleum in the sewer lines. After excavating the area, crews removed

50-to-100 gallons of petroleum. DNR suspected that the source of the petroleum was Inner City Oil, a nearby gas station owned and operated by Zill.[1] DNR issued a Declaration of Hazardous Substance Emergency ("Declaration") to Zill, which instructed Zill to take remediation measures to stop the spill, abate the vapors in the nearby homes, and clean up the spilled petroleum.

Upon receiving the Declaration, Zill attempted to work with DNR by hiring a consultant to conduct tank tightness tests, site characterizations, and other remediation activities as requested by DNR.

DNR dug monitoring wells[2] near Zill's gas station and the Cleveland Avenue homes, and, upon testing the wells, DNR found petroleum present in several of them, including wells located on Zill's property. DNR also determined that the electronic monitoring system for Zill's underground storage tanks indicated a leak. Based on this information, DNR sued Zill, seeking, in Count I, injunctive relief for failing to abate the hazardous substance emergency; in Count II, reimbursement for cleaning the spilled petroleum; and, in Count III, injunctive relief and civil penalties for violation of the Underground Storage Tank Release Abatement regulations.[3]

After DNR filed suit, a technician employed by the manufacturer of Zill's underground storage tanks inspected the tanks and found a pinhole leak in one tank. The technician repaired the leak and concluded that leaked fuel had not escaped the outer rib of the tank. Based on this

---

[1] DNR's suspicion that Zill was the cause of the spill was based on a 2006 spill at the same gas station. In 2006, DNR performed a surface resistivity geophysical survey, which revealed that there was a fracture in the bedrock between Zill's gas station and the homes on Cleveland Avenue. A surface resistivity geophysical survey uses electrical currents to determine the resistance of the subsurface of the earth.

[2] Monitoring wells consist of pipes placed into the ground with screens where ground water and possible contaminants can pass through. These wells allow DNR to monitor the ground water for any contaminants.

[3] DNR's petition included additional claims that were dismissed before trial and are not relevant to this appeal.

Counts I and III of DNR's lawsuit were tried to the trial court while Count II was tried to a jury.

information, Zill provided inspection and site characterization reports to DNR and denied that it was the source of the petroleum in the sewer lines.

At trial, DNR presented evidence that an underground storage tank at Zill's gas station had a leak, that the geography at the gas station would cause released petroleum to migrate towards the affected homes, and that DNR did not believe the spilled petroleum could have come from an alternative source.

Zill presented expert testimony showing that the petroleum found in the monitoring wells contained lead and MTBE and was degraded such that it could not have been released from Zill's gas station during the time Zill owned the station.[4] Zill also presented evidence showing that the geography of its gas station, which sits in a bowl at the top of a hill, would not have allowed for petroleum released from its tanks to flow toward the homes on Cleveland Avenue. Zill's expert, therefore, concluded that the petroleum found by DNR originated from another source.

The jury unanimously found that Zill was not responsible for the cleanup costs related to the spill (Count II),[5] and the trial court entered its judgment on Counts I and III in favor of Zill. DNR appeals. Additional facts will be discussed throughout this opinion.

**Discussion**

DNR raises three points on appeal. In its first two points, DNR alleges that the trial court misapplied the law in denying DNR the injunctive relief it sought in Counts I and III. In Point III, DNR asserts that the trial court erred in granting Zill's motion for directed verdict on DNR's claim for civil penalties under Count III of its amended petition. We find no error.

---

[4] Zill purchased the gas station in 2003. Leaded gasoline was outlawed in 1973, and MTBE, a gasoline additive, was banned in Kansas City in 2002.

[5] DNR does not appeal the jury verdict on Count II.

3

## *Points I & II*

In Point I, DNR alleges that the trial court erred in finding Zill not liable for the petroleum spill, arguing that the trial court misapplied the law by requiring DNR to prove that Zill was the sole source of contamination involved in the hazardous substance emergency. In Point II, DNR claims that the trial court erred in denying its request for injunctive relief pursuant to the Underground Storage Tank Release Abatement regulations, arguing that the trial court misapplied the law by considering only portions of the regulations DNR alleged Zill violated and by conflating Counts I and III in DNR's amended petition. Because both of these points allege the trial court misapplied the law, we address them together.

## *Standard of Review*

"The judgment of the trial court in a court-tried civil case will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Swallow Tail, LLC v. Mo. Dep't of Conservation*, 522 S.W.3d 309, 314 (Mo. App. W.D. 2017) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "A claim that the judgment erroneously declares or applies the law, [ ] involves review of the propriety of the trial court's construction and application of the law." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012) (citing *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010)). "This Court applies *de novo* review to questions of law decided in court-tried cases." *Id.* (citing *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 899 (Mo. banc 2006)).

## *Point I*

In Point I, DNR claims that the trial court erroneously applied the law by "requir[ing] DNR to prove Zill was the source of all the contamination identified in the area, when the [statute] only

required DNR to prove that Zill's hazardous substance was involved in the hazardous substance emergency."

In its judgment denying DNR injunctive relief, the trial court made the following relevant findings:

37. This court finds there was no credible evidence to establish by a preponderance of the evidence that a release from Zill's gas storage tank(s) was the cause of the leak of free-floating petroleum product observed by [DNR] in January, 2015.

. . .

44. Plaintiffs alleged, but failed to prove by a preponderance of the evidence, that a release of more than fifty gallons of liquid petroleum product was released from Zill's underground tanks or property at any relevant time prior to January, 2015. There was no credible evidence that Zill's underground tank or stored petroleum product was the source of the free-floating petroleum product observed by [DNR] in January, 2015.

45. There was no credible evidence to establish by a preponderance of the evidence that the prior release from Zill's land in 2006 was the source of the free petroleum product that appeared in the lateral and main sewer line or in the excavation hole at 30th and Cleveland in January, 2015.

46. There is no credible evidence to establish by a preponderance of the evidence that Zill's property, land, storage tanks or stored petroleum was the source of petroleum product or vapors reported on the west side of Cleveland in 2014, 2015 or 2016.

The Hazardous Substance Cleanup statute provides that DNR "[m]ay require the person having control over a hazardous substance involved in a hazardous substance emergency to clean up the hazardous substance and take any reasonable actions necessary to end a hazardous substance emergency[.]" § 260.510(2), RSMo.[6] A "hazardous substance emergency" is defined as "[a]ny release of petroleum . . . in excess of fifty gallons[.]" § 260.500(6)(b), RSMo. A "person having control over a hazardous substance" includes "any person . . . storing, . . . a hazardous substance

---

[6] Statutory references are to the Missouri Revised Statutes 2010, updated through the 2014 supplement.

when a hazardous substance emergency occurs[.]" § 260.500(8), RSMo. "Release" is defined as "any threatened or real emission, discharge, spillage, leakage, pumping, pouring, emptying or dumping of a substance into or onto the land, air or waters of the state . . . unless the substance is confined and is expected to stay confined to property owned, leased or otherwise controlled by the person having control over the substance[.]" § 260.500(9), RSMo.

DNR argues in Point I that the trial court improperly increased DNR's burden by requiring it to show that Zill was the only source of the contamination found in the area of the Cleveland Avenue homes. We agree with DNR that it is not necessary for the agency to prove that a defendant was the *sole source* of *all* of the hazardous substances involved in a hazardous substance emergency. However, we reject DNR's view that the trial court applied a different legal standard.[7] Indeed, a review of the judgment makes clear that the trial court's ruling in favor of Zill was not the product of a misplaced view that DNR was required to establish that Zill was solely responsible for all of the released petroleum found in the impacted area but rather was based on its determination that DNR had failed to establish that Zill was responsible for *any* of the petroleum involved in the hazardous substance emergency.[8] In so doing, the trial court properly applied the law.

---

[7] DNR focuses on a comment made by the trial court during a break in the trial after DNR had presented its evidence when the trial court noted, "I think it is clearly established in State's evidence that there was a release, that does not appear to be, has not been disputed or in any way denied." However, DNR takes this statement out of context as the comment was made while the parties debated the extent of the evidence Zill could present in its defense. Zill later presented evidence that the release had not originated from its property. Further, "'[o]ur review is ordinarily limited to the written judgment and does not extend to oral comments made by the trial court, which are not part of the judgment.'" *Noble v. Noble*, 456 S.W.3d 120, 128 (Mo. App. W.D. 2015) (quoting *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo. App. W.D. 2012)).

[8] DNR heavily focuses its argument on the evidence it presented at trial. We note that DNR does not assert an against-the-weight-of-the-evidence challenge or argue that there was not substantial evidence supporting the trial court's findings. Moreover, even if it had made such challenges, "'[i]n reaching its judgment the trial court is free to believe any, all, or none of the evidence presented at trial.'" *Brady v. Starke*, 517 S.W.3d 28, 35 (Mo. App. W.D. 2017) (quoting *Hunter v. Moore*, 486 S.W.3d 919, 925 (Mo. banc 2016)). Here, the trial court clearly concluded that DNR had failed to present sufficient evidence to establish that Zill's petroleum was involved in the hazardous substance emergency.

Point I denied.

In Point II, DNR alleges that the trial court erred in denying the injunctive relief it sought against Zill in Count III for violating the regulations pertaining to underground storage tanks, arguing that the trial court erroneously applied the law by "focus[ing] only on part of the regulatory requirements Zill was alleged to have violated and conflat[ing] Counts I and III in DNR's Amended Petition."

Count I of DNR's amended petition sought injunctive relief based on the allegation that Zill failed to complete abatement measures related to the hazardous substance emergency. Count III, on the other hand, sought injunctive relief and civil penalties based on alleged violations of the Underground Storage Tank Release Abatement and Investigation regulations set out in 10 CSR 26-2.050 through 10 CSR 26-2.075,[9] which were alleged to include failing to conduct a tank tightness test; failing to prevent further release of petroleum into the environment; and failing to take certain initial abatement steps, including the submission of certain reports to DNR.

"To be entitled to an injunction, a party must demonstrate: 1) no adequate remedy at law; and 2) irreparable harm will result if the injunction is not awarded." *Zoological Park Subdist. of the Metro. Park Museum Dist. v. Smith*, 561 S.W.3d 893, 896 (Mo. App. E.D. 2018) (citing *Beauchamp v. Monarch Fire Prot. Dist.*, 471 S.W.3d 805, 813 (Mo. App. E.D. 2015)). Moreover, injunctive relief is only available to require a party "to do or to refrain from doing a particular thing." *Comm'n Row Club v. Lambert*, 161 S.W.2d 732, 736 (Mo. App. E.D. 1942) (citation omitted); *see also Smith*, 561 S.W.3d at 896 (citation omitted) ("The purpose of an injunction is to prevent actual or threatened acts that constitute real injury."). Thus, DNR was entitled to seek

---

[9] CSR citations are to the Missouri Code of State Regulations, effective December 30, 2011.

injunctive relief against Zill only for those statutory or regulatory violations that were still occurring at the time of trial.

DNR's amended petition alleged four continuing violations: (1) "From July 15, 2015, to the present, Zill failed to submit a report to the Department summarizing the initial abatement steps taken;" (2) "From July 15, 2015, to the present, Zill has failed to provide data on the estimated quantity of the release;" (3) "From July 15, 2015, to the present, Zill failed to provide information on the surrounding population, subsurface soil conditions, location of subsurface sewers, climatological conditions and land use;" and (4) "From July 15, 2015, to the present, Zill failed to submit information to [DNR] collected to characterize the release." As a result, the trial court properly focused on these four ongoing claims when it considered granting injunctive relief and disregarded allegations relating to past violations that had been resolved. *See Williams v. Williams*, 99 S.W.3d 552, 560 (Mo. App. W.D. 2003) (quoting *Metts v. City of Pine Lawn*, 84 S.W.3d 106, 109 (Mo. App. E.D. 2002); *Fugel v. Becker*, 2 S.W.2d 743 (Mo. 1928)) ("Since the purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief, not being used for the purpose of punishment or to compel persons to do right but merely to prevent them from doing wrong, rights already lost and wrongs already perpetrated cannot be corrected by injunction, and the party aggrieved must seek some other remedy for redress[.]").

In support of its claims of ongoing violations of the underground storage tank regulations, DNR presented the testimony of one of its former environmental scientists, who had been the project manager overseeing Zill's site. This witness testified that Zill had not timely completed many of the items required in the regulations, had failed to complete the site characterization[10]

---

[10] A site characterization under the regulations includes "information about the site and the nature of the release, including information gained while confirming the release or completing the initial abatement measures[.]"

8

mandated by 10 CSR 26-2.074,[11] and had not recovered all of the spilled petroleum practicable as required by 10 CSR 26-2.075. However, the environmental scientist acknowledged that she had retired in April 2017 and did not know what had been completed by Zill after that date.[12] Significantly, the individual who assumed the role of project manager upon his predecessor's retirement did not testify at trial, and DNR submitted no additional evidence in support of Count III.

In denying injunctive relief, the trial court found that DNR "ha[s] not established by a preponderance of the evidence what, if any additional abatement procedure or site characterization work is required of Defendant Zill." The trial court further found that "[t]here is no credible evidence from DNR that the reports of Defendant Zill, through its retained consultants, were insufficient to satisfy the regulatory requirements" and that DNR's "claim for injunctive relief entirely fails to meet its burden by a preponderance of the evidence[.]"

The trial court did not misapply the law by denying DNR's claims for injunctive relief on the alleged ongoing violations, nor did it conflate the claims in Count I with those in Count III. Rather, the trial court found that DNR failed to put forth sufficient evidence to meet its burden of establishing that there were reports or data required by the regulations that Zill had failed to provide to DNR. Thus, we do not find that the trial court misapplied the law in denying DNR the injunctive relief that it sought under Count III.

Point II denied.

---

[11] The environmental specialist admitted on cross-examination that Zill submitted site characterization reports in 2015, but she could not say whether DNR responded.

[12] Trial was held in January 2018.

## *Point III*

In Point III, DNR claims that the trial court erred in granting Zill's request for a directed verdict denying DNR's request for civil penalties.

At the close of all of the evidence, Zill moved for a directed verdict, arguing that (1) the statute authorizing the imposition of civil penalties requires that the owner or operator of an underground storage tank violate an order issued by DNR, and (2) DNR had not issued such an order to Zill. The trial court agreed.

Our review of a court-tried case is governed by the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[13] *See City of St. Louis v. Riverside Waste Mgmt., L.L.C.*, 73 S.W.3d 794, 796 (Mo. App. E.D. 2002). We will affirm the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32. "For factual disputes, the evidence and all reasonable inferences from the evidence are 'viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences must be disregarded.'" *B.K. v. Mo. State Hwy. Patrol*, 561 S.W.3d 876, 879 (Mo. App. W.D. 2018) (quoting *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 618 (Mo. App. W.D. 2001)). "'Statutory interpretation is an issue of law that this Court reviews de novo'" *Id.* (quoting *Finnegan v. Old Republic Title Co. of St. Louis*, 246 S.W.3d 928, 930 (Mo. banc 2008)).

DNR argues that "the trial court focused only on § 319.127, RSMo, and erroneously concluded that § 319.127, RSMo, authorizes civil penalties only when the responsible party fails

---

[13] We understand that DNR appeals from the trial court's grant of Zill's motion for a directed verdict. "In a bench trial, however, there is no jury verdict to direct, so such a motion was improper." *BMJ Partners v. King's Beauty Distrib. Co.,* 508 S.W.3d 175, 177 n.2 (Mo. App. E.D. 2016) (citation omitted). Instead, we construe it as a motion for judgment. *Id.* On appeal, we apply the standard of review applicable to a court-tried case.

to comply with an order and absent an order, no request for civil penalties lie, in that Count III requested civil penalties under §§ 319.139 and 319.127, RSMo, both of which authorize DNR to commence a civil action for appropriate relief including civil penalties regardless of whether DNR issued an order."

DNR's interpretation of these statutes is incorrect.[14] In order to obtain civil penalties for violations of the underground petroleum storage tank regulations under section 319.127, RSMo, DNR must first issue an order to the alleged violator of the regulations.[15]

Under section 319.127.1, RSMo, "[e]xcept as provided in this section, whenever on the basis of any information, [DNR] determines that any person is in such violation, [DNR] may issue an order requiring compliance within a reasonable specified time period, pursuant to chapter 260, or [DNR] may commence a civil action in a court of competent jurisdiction in which the violation occurred for appropriate relief, including a temporary or permanent injunction." This provision does not require DNR to issue an order prior to commencing a civil action in a circuit court seeking "appropriate relief, including a temporary or permanent injunction."

---

[14] DNR's reliance on section 319.139, RSMo is misplaced. Section 319.139 provides that, under certain circumstances, "the director [of DNR] may issue an order assessing an administrative penalty upon the violator under this section." There is no evidence that the director of DNR issued an order to Zill under this provision or otherwise attempted to assess administrative penalties in this matter. Nevertheless, DNR argues that section 319.139.5, which provides that "[t]he state may elect to assess an administrative penalty, or, in lieu thereof, to request that the attorney general or prosecutor file an appropriate legal action seeking a civil penalty in the appropriate circuit court[,]" vests it with stand-alone authority to pursue a civil penalty, untethered to the requirements of any other provision, and in the absence of any order issued by the director of DNR. We do not assign such a sweeping interpretation to this isolated provision. Instead, we find that section 319.139.5 simply confirms that DNR may request the filing of "an appropriate legal action seeking a civil penalty[ ]" as an alternative to pursuing an administrative penalty under section 319.139. Under these facts, such "an appropriate legal action seeking a civil penalty" would be brought under section 319.127. This interplay between section 319.139 (administrative penalties) and section 319.127 (civil penalties) is further validated by section 319.127.2 which states that "[a] civil monetary penalty under this section shall not be assessed for a violation where an administrative penalty was assessed under section 319.139." Finally, as discussed *supra*, an action for civil penalties under section 319.127 requires an order to have been issued by DNR.

[15] DNR makes no argument on appeal that the declaration it issued to Zill constituted an order.

However, the following subsection provides that "[i]f an owner or operator fails to comply with an order under this section within the time specified, the department may commence a civil action in a court of competent jurisdiction for injunctive relief to prevent any such violation or further violation or for the assessment of a civil penalty not to exceed ten thousand dollars for each day, or part thereof, the violation occurred or continues to occur, or both as the court deems proper." § 319.127.2, RSMo. Under the plain language of this subsection, the assessment of civil penalties springs only from the failure of an owner or operator of an underground storage tank to comply with an order issued by DNR under section 319.127.1, RSMo. Because DNR issued no such order to Zill, the statutorily imposed condition precedent for assessing civil penalties was lacking.

Despite the clear requirement found in section 319.217.2, RSMo, that civil penalties are only available for violation of an order issued by DNR, DNR argues that section 319.127.1, RSMo, independently "authorizes DNR to seek a civil penalty as a form of 'appropriate relief'" in the absence of such an order. This wholly ignores the requirements of section 319.127.2, RSMo, which plainly limits the assessment of civil penalties to those instances where a party has violated an order issued by DNR.

"[T]here can be no doubt that a penal statute must be strictly construed and that a penalty may not be created by the construction of a statute but the penalty must clearly appear to have been intended to be created by the Legislature." *State ex rel. Danforth v. European Health Spa, Inc.*, 611 S.W.2d 259, 262 (Mo. App. W.D. 1980); *see also City of Charleston ex rel. Brady v. McCutcheon*, 227 S.W.2d 736, 738 (Mo. banc 1950) (additional citations omitted) ("Penal provisions of a statute, or of a statute penal in nature are always strictly construed, and can be given no broader application than is warranted by its plain and unambiguous terms."). Thus, we

cannot construe the phrase "appropriate relief" found in section 319.127.1, RSMo, to authorize the assessment of civil penalties under circumstances in direct contradiction to the clear and unambiguous requirements established by the legislature in the subsequent subsection. Since section 319.127.2, RSMo, only permits civil penalties to be assessed for violations of an order issued by DNR and, in this case, DNR did not issue such an order to Zill, the trial court did not err in ruling in Zill's favor on DNR's request for civil penalties.

Point III denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

13