CMI FOOD SERVICE, INC. and
Marlowe King, Appellants,

v.

HATRIDGE LEASING, doing business as
Missouri Zipps, Inc., doing business as
Columbia Snapps, Inc., and doing business as Rally's, and Terry Hatridge and
Laverne Hatridge, Respondents.

No. WD 48855.

Missouri Court of Appeals,
Western District.

Jan. 17, 1995.

Randall Brown Johnston, Columbia, for appellants.

Hallie H. Gibbs, Jefferson City, for respondents.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

CMI Food Service, Inc., leased land to Terry and LaVerne Hatridge for a "fast food" restaurant. The lease required the Hatridges to pay "either the minimum rent or percentage rent, whichever is greater." CMI contends that this provision was a mistake. The parties had agreed before signing the lease, CMI contends, that the rent would be a minimum rent *plus* a percentage of sales. CMI asked the trial court to reform the lease to conform to this prior agreement, but the trial court refused. CMI appeals, and we affirm.

On April 10, 1987, CMI and the Hatridges, doing business as Hatridge Leasing, executed a 20-year lease of land at 815 Business Loop 70 East in Columbia beginning on July 1, 1987. The lease required the Hatridges to build a restaurant on the land and to pay all expenses associated with building construction. At the end of the lease term or upon termination of the lease, the building was to become CMI's property.

The lease set minimum rent at $18,000 for years one through four; $25,000 for years five through nine; and $30,000 for years 10 through 20. It also established a method for calculating a percentage rent: five percent of all net sales between $400,000 and $600,000; plus four percent of all net sales between $600,000 and $800,000; plus three percent of all net sales between $800,000 and $1 million; plus two percent of all net sales exceeding $1 million. The lease required the Hatridges to pay CMI "either the minimum rent or percentage rent, whichever is greater."

No one testifying at trial could remember who prepared the lease. CMI's former attorney, Jean Goldstein, did not prepare it, and she did not review it before the parties signed it. Goldstein had prepared drafts of the lease for CMI. None of the drafts were executed, and their terms differed from the executed lease. The drafts provided for variable rental amounts.

William Bratrud, CMI's stockholder and president, read the lease before signing it for CMI. He did not comment at that time about the rent terms. He had more than 15 years' experience in commercial leasing and more than 30 years' experience in restaurant and commercial management. Michael Bratrud also read the lease, and he did not make any objections to its terms. He had experience with leases involving other Columbia area restaurants.

Before signing the lease, the Hatridges read the lease. They believed that it required them to pay either the minimum rent, or a percentage of sales, whichever was greater.

From the beginning, however, the Hatridges did not calculate correct rent payments. They paid: $18,000 minimum rent plus five percent of $1 to $600,000 in net sales; plus four percent of $600,000 to $800,000 in net sales; plus three percent of net sales over $800,000. Their rent payments totalled $40,059 in 1987; $44,132 in 1988; $40,928 in 1989; $39,189 in 1991; $38,877 in 1992; and $22,467 from July 1992 to January 1993. Although the lease increased the minimum rent from $18,000 to $25,000 in August 1991, the Hatridges continued to pay a minimum of $18,000.

In November 1992, Michael Bratrud advised the Hatridges' office manager that the Hatridges had been calculating the rent incorrectly. Terry Hatridge reviewed the rent payments and the lease and concluded that they had paid approximately $95,000 more than they owed by paying both the minimum and a percentage of sales.

The lease said, "In the event the amount of rent for said year actually paid by Lessee exceeds the percentage set out in ... this Article as computed on a twelve month basis, then such excess rental payments shall be credited by Lessor to Lessee upon the next installment or installments of monthly rental due under the Lease." The Hatridges demanded a refund on the basis of this provision. CMI did not comply, so the Hatridges quit paying rent in January 1993.

CMI and Marlowe King[1] sued the Hatridges. They asked the court: (1) for rent and possession based upon the terms of the lease; (2) for a declaratory judgment to construe the lease terms, and (3) to reform the lease to reflect a minimum rent plus percentage rent. The Hatridges countersued. They sought a rent refund or credits and damages for unjust enrichment. The trial court entered a judgment ordering that the Hatridges retain possession and pay either the minimum rent or percentage of sales rent, whichever was greater. The trial court also awarded the Hatridges $88,543 in damages to be applied against future rent obligations. CMI appeals.

In its first point relied on, CMI contends that the trial court erred in concluding that it could not consider parol evidence. CMI argues that the court erred because it relied on *Dehner Urban Redevelopment Corporation—St. Louis v. Dun & Bradstreet, Inc.,* 567 S.W.2d 700 (Mo.App.1978). The *Dehner* court held that parol evidence may not be considered in showing the intent of the parties where the contract term is unambiguous. *Id.* at 704. CMI argues that *Dehner* misconstrues the Missouri law. We agree, but we do not understand how the trial court's reliance on *Dehner* prejudiced CMI.

Longstanding precedent provides that parol evidence is admissible to establish a claim for reformation of a written instrument. *State ex rel. State Highway Commission v. Schwabe,* 335 S.W.2d 15, 19 (Mo. 1960); *Walters v. Tucker,* 308 S.W.2d 673, 675 (Mo.1957). A written instrument may be reformed because of a scrivener's mistake which does not incorporate the parties' true intentions. *Duenke v. Brummett,* 801 S.W.2d 759, 765 (Mo.App.1991); *Edwards v. Zahner,* 395 S.W.2d 185, 189 (Mo.1965). "However, a mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended." *Walters,* 308 S.W.2d at 675.

"Where the evidence supports reformation, the remedy is not barred by the fact that the instrument sought to be reformed is unambiguous." *Duenke,* 801 S.W.2d at 765. The court in *Duenke* criticized *Dehner:* "To the extent ... that *Dehner* appears to hold that an unambiguous writing may not be reformed, it is inconsistent with the Missouri cases and other authorities ... which are to the effect that lack of ambiguity does not preclude reformation." *Id.* at 768. *Duenke* allows parol evidence in cases in which the writer of a contract makes a mistake and the contract needs to be reformed.

We agree with CMI that the trial court erred when it said:

The conduct of the parties may not be considered for purposes of determining the

1. CMI assigned the lease to King on February 1,    1990, as security for CMI's debt.

intent of the parties to the lease agreement where the agreement's clause in question is not ambiguous.... Though the construction the parties place on a contract is of considerable significance in ascertaining the meaning of terms in an ambiguous contract, a contract free from ambiguity is to be construed as written.... It is only when a contract term is unclear that the Court may consider evidence of how the contract was understood or acted on by the parties.... The Lease rental provisions which are the subject of this action are clear and unambiguous on their face and, therefore, not subject to construction by the Court.

This conclusion was erroneous because a contract may be reformed if substantial evidence, including parol evidence, establishes a scrivener's mistake—even if the contract is unambiguous.

The trial court, however, also found that "CMI ... failed to establish by clear, cogent, and convincing evidence beyond a reasonable doubt, that a prior agreement existed between CMI and the Hatridges that was contrary to the rental terms contained in the Lease." In other words, the trial court found that CMI did not establish substantial evidence of a scrivener's mistake.

■ A person seeking reformation of a writing must show by clear, cogent, and convincing evidence that the parties had made a prior agreement which the writing failed to accurately incorporate because of a mistake. *Brinkenhoff Land & Livestock Company v. Doyle,* 778 S.W.2d 336, 338 (Mo.App.1989). Hence, the trial court's erroneous conclusion that an unambiguous contract cannot be reformed is inconsequential if CMI indeed failed to establish by clear, cogent, and convincing evidence that it had a prior agreement with the Hatridges.

■ In determining whether CMI had established a prior agreement, the trial court, after hearing evidence (including parol evidence offered without objection), found that CMI failed to meet its burden in establishing a prior agreement. The trial court considered, as evidenced by its findings of fact, the parties' conduct before and after executing the lease. Had the trial court relied solely on the unambiguous nature of the lease, it would not have specifically addressed facts relating to the negotiation of the lease, the intent of the parties in executing the lease, the parties' interpretation of the lease, the rental payment and history of the parties' dispute, and the overall interaction between the parties during the lease term. Such findings would not have been possible had the court not relied on and allowed substantial parol evidence. Thus, we first note that the trial court did not rely solely on *Dehner* in its decision.

Further, once the trial court determined that no prior agreement existed between the parties, then the written agreement controlled. The trial court's conclusion that parol evidence may be considered only if a contract term is ambiguous is correct if the scrivener did not make a mistake. We find no basis for overturning the trial court's conclusion that CMI did not meet its burden in establishing a mistake.

■ CMI counters that the Hatridges' rent checks were clear, cogent, and convincing evidence of the parties' mutual mistake because the Hatridges paid both the minimum rent and a percentage of sales. We disagree. We recognize that the parol evidence rule prohibits only evidence of contrary agreements made prior to or contemporaneously with the contract. *Warrenton Campus Shopping Center, Inc. v. Adolphus,* 787 S.W.2d 852, 855 (Mo.App.1990). When litigants present conflicting evidence, however, the fact finder is free to sort out the conflicts, and we must defer to its rulings so long as they are supported by competent and substantial evidence. *Straeter Distributing, Inc. v. Fry–Wagner Moving and Storage Company, Inc.,* 862 S.W.2d 415, 418 (Mo. App.1993).

■ CMI contends that the parties intended for the lease to require payment of minimum rent plus a percentage of sales. The lease said, "Lessee shall pay either the minimum rent or percentage rent, whichever is greater." Terry Hatridge testified that this provision was consistent with his understanding of the agreement. Although the Hatridges, contrary to the lease, paid mini-

mum rent plus a percentage of sales, they calculated the rent differently from the formula which CMI contends should be reflected in the lease. The trial court could have concluded from this evidence that the Hatridges did not know how to calculate the rent according to the lease terms. They erroneously calculated the percentage rent and erroneously paid the minimum rent. We find no basis for overruling the trial court's ruling that CMI did not establish by clear and convincing evidence that the alleged mistake was mutual and that the Hatridges intended for the lease to provide for a minimum plus a percentage of sales.[2]

▆ CMI argues that Terry Hatridge's testimony that rent was to be a minimum rent or a percentage was not credible. The trial court is in the best position to judge credibility, and it may believe all, part or none of the testimony of any witness. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Where the evidence is conflicting, we defer to the trial court's ruling. *Straeter Distributing*, 862 S.W.2d at 418.

We affirm the judgment of the trial court.

All concur.

---

**2.** Because we reach this conclusion, it is unnecessary for us to separately address CMI's third point relied on that the trial court erred in finding that CMI had not established by clear, cogent and convincing evidence that the parties had reached a prior agreement that rent was to be a minimum rent plus a percentage of sales.