107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Metro
North State Bank, Plaintiff-Appellee,
v.
Ranbir S. SAHNI, Defendant-Appellant.
 No. 96-55236.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1996.
Decided Feb. 5, 1997.
 
 Before: FERGUSON, BEEZER, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal is from a partial summary judgment issued by the district court of the Central District of California. The court awarded partial summary judgment on three counts of the Federal Deposit Insurance Corporation's Complaint against Sahni relating to Sahni's default on a $1.2 million dollar loan obligation ("the Metro Obligation"), originally established by Metro North State Bank. The FDIC was appointed Receiver for Metro Bank upon the bank's insolvency. The district court's order disposed of Sahni's affirmative defenses of usury, offset, and commercial frustration as well as Sahni's request for reformation of the maturity date of the Metro Obligation. The court ordered the sale of Sahni's general partnership interest in several limited partnerships, pledged as security on the Metro Obligation, and awarded the FDIC post-judgment interest of 14.5%--the default rate specified in the Metro Obligation. We AFFIRM.
 
 I.
 
 3
 We review a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1994). We therefore must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court applied the relevant substantive law. Id. In cases involving contract disputes, we can assess the plausibility of competing factual inferences regarding the intentions of the parties to the contract. Miller v. Fairchild Indus., 797 F.2d 727, 735 (9th Cir.1986).
 
 II.
 
 4
 Sahni and the FDIC are not strangers. From 1986 through 1991, they litigated claims against one another arising out of Sahni's operation of American Diversified Savings Bank ("ADSB") and the conservatorship and receivership of that institution by the Federal Savings and Loan Insurance Corporation (later succeeded by the FDIC). The parties reached a comprehensive settlement agreement which provided, among other things, for Sahni to make a substantial payment to the FDIC. The Metro Obligation was formed to satisfy Sahni's responsibilities under the agreement.
 
 
 5
 Sahni borrowed $1,210,000 from Metro North State Bank; $1,150,000 of which was transferred from Metro to the FDIC and the remaining retained by the bank. In connection with this loan, Sahni pledged as security all of his rights and interests as general partner in ten limited partnerships, all of which own and/or operate Department of Housing and Urban Development low-income housing projects. Sahni, and his attorney, warranted that Sahni had the authority to convey such interests. The Metro Obligation also specifically provided that repayment was to be governed by the laws of the state of Missouri.
 
 
 6
 The maturity date on the Metro Obligation was originally December 4, 1993. This date was extended to January 10, 1994, through a written Extension Agreement between Metro Bank and Sahni. The Extension Agreement included an integration clause stating that any alterations to the agreement had to be in writing.
 
 
 7
 In November of 1992, Metro Bank was placed in receivership by the Missouri Director of Finance and the FDIC was appointed Receiver. The Metro Obligation matured on January 19, 1994, and all principal and interest became due. However, Sahni failed to satisfy his obligation to repay. The underlying action was filed by the FDIC seeking to recover the principal of the Metro Obligation plus related interest charges.
 
 A.
 
 8
 Sahni admits that a contract was created between he and Metro Bank, but claims that the maturity date has been extended by Metro Bank--with the FDIC's knowledge. This claim is without support. The Metro Obligation comprises an "integrated contract," as evinced by the clear language of the loan documents and the integration clauses. Union Electric Co. v. Fundways, Ltd., 886 S.W.2d 169, 171 (Mo.App.1994). Sahni claims that Metro Bank and the FDIC entered into an unwritten agreement to extend the maturity date of the Metro Obligation for several years. However, Sahni failed to produce any documentation in support of this contention.[1] While the parole evidence rule does not bar evidence that can correct misstatements in a contract, this exception is intended to redress drafting errors and not to implement an agreement not supported by evidence. CMI Food Service, Inc. v. Hatridge Leasing, 890 S.W.2d 420, 423 (Mo.App.1995).
 
 
 9
 Futhermore, 12 U.S.C. § 1823(e)(1) bars the enforcement of "side agreements" against the FDIC which fail to satisfy certain conditions: (1) the agreement is in writing, (2) it was executed by the depository institution contemporaneously with the acquisition of an asset by the depository institution, (3) it was formally approved by the board of directors of the depository institution, and (4) it has been an official record of the depository institution. See also Resolution Trust v. Midwest Fed. Sav. Bank, 36 F.3d 785, 795 (9th Cir.1993). The absence of any evidence satisfying these conditions bars Sahni's reformation request as well.
 
 B.
 
 10
 Sahni alleged several affirmative defenses; all fail to establish any genuine issues of disputed fact. First, Sahni has failed to provide the necessary factual support warranting an offset of the principal of the Metro Obligation. See Mochar Sales v. Meyers, 373 S.W.2d 911, 914 (Mo.App.1963) (defendant has burden of proving affirmative defense of set off). The district court rejected this defense as Sahni failed to specify when the alleged sale of partnership interests occurred, how much the interests were sold for, and how much was credited to undeserving parties.
 
 
 11
 Second, Sahni's defense of commercial frustration, based on the downturn in California's real estate market, fails as a matter of law. The defense of commercial frustration is available only upon the occurrence of an unforeseen event not caused by or under the control of either party to a contract which destroys or nearly destroys the value of performance or the object or purpose of the contract. Howard v. Nicholson, 556 S.W.2d 477, 481-82 (Mo.App.1977). Fluctuation in a commercial market, regardless of its magnitude, is foreseeable.
 
 
 12
 Third, the Metro Obligation qualifies as a "business loan" under Mo.Rev.Stat. § 408.035. As such, it is exempt from Missouri's usury laws, and Sahni's affirmative defense of usury fails as well.
 
 C.
 
 13
 The district court granted the FDIC's request for judicial foreclosure of the security pledged in the Metro Obligation--Sahni's general partnership interests in several limited partnerships. Sahni claims that judicial foreclosure is inappropriate because the pledged partnership rights do not include the rights to operate the partnerships and possess the property owned by the partnerships. However, his claim directly contradicts the warranties he made in the Metro Obligation. Furthermore, the documents creating these partnerships do not specify any such delineations. Judicial foreclosure of these partnerships is an appropriate step the FDIC can request in its efforts to determine the assets of distressed institutions such as Metro Bank. See Westpark Assoc. v. Butterfield Sav. & Loan Assoc., 60 F.3d 1452, 1458 (9th Cir.1995).
 
 D.
 
 14
 Finally, Sahni claims that the post-judgment interest awarded by the district court to the FDIC violates 28 U.S.C. § 1961(a). This section provides a formula for calculating post-judgment interest. However, this formula is not the exclusive method for calculating such awards. While this court has not previously endorsed using a contract's default interest rate to calculate an award of post-judgment interest, we believe that this method is entirely consistent with the policy underlying the enactment of § 1961. See Kaiser Aluminum & Chemical Corp. v. Bonjourno, 494 U.S. 827 (1990). The Metro Obligation provides a specific rate of interest in the event of default. Applying the formula provided in § 1961 would arrive at a lower rate, thereby punishing the FDIC and failing to encourage Sahni to satisfy his obligation as soon as possible.
 
 III.
 
 15
 The partial summary judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It should be noted that in his briefs to this court, Sahni refers to documents he introduced in his motion to set aside the district court's order. However, this court will not review evidence presented for the first time in an Appellant's motion to set aside an order where the defeated litigant failed to initially present such evidence in his defense, even though it was reasonably available to him. Northwest Acceptance Corp. v. Lynnwood Equipment, 841 F.2d 918, 925-26 (9th Cir.1988). Nevertheless, even had we considered this evidence it would not have altered our decision