

# SUPREME COURT OF MISSOURI
# en banc

| | | |
|---|---|---|
| BRITTANY HUNTER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC95083 |
| | ) | |
| CHARLES MOORE, SR., | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
The Honorable David L. Dowd, Judge

*Opinion issued April 19, 2016*

Brittany Hunter (Plaintiff) brought negligence claims arising out of her stay at a motel against the motel's manager, Charles Moore Sr. (Defendant) and his employer. The parties entered a settlement agreement under section 537.065.[1]  Because the parties disputed some of the terms of the agreement, Plaintiff filed a separate action, which is the subject of this appeal, against Defendant seeking specific performance and reformation of their executed agreement.  Specifically, Plaintiff asked the court to add to their written instrument two terms that she claims the parties agreed to but mistakenly failed to reduce to writing: (1) that Defendant's insurer, American Family Mutual Insurance Company

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

(Insurer) is to be precluded from controlling the defense of Plaintiff's negligence claims against Defendant, and (2) that Defendant is to cooperate with Plaintiff in the underlying action by agreeing to an uncontested hearing on liability and damages. This opinion will at times refer to these terms collectively as "the disputed terms."

Based on evidence adduced at a bench trial, the trial court entered judgment reforming the written agreement to require Defendant to preclude Insurer from controlling the defense of the underlying action and to cooperate with Plaintiff in the underlying action, "**either by agreeing to a consent judgment or** having an uncontested hearing on liability and damages." (emphasis added). On appeal, Defendant argues that there was no substantial evidence to support reformation.

Although there was substantial evidence to support the trial court's judgment reforming the written instrument to include the disputed terms, both parties agree that it was never their intention for Defendant to enter a consent judgment. This Court may enter the judgment as the trial court ought to have entered. Rule 84.14. Accordingly, the portion of the judgment requiring Defendant to cooperate in the underlying action "either by agreeing to a consent judgment or having an uncontested hearing on liability and damages" is modified to require only that Defendant cooperate by "having an uncontested hearing on liability and damages." The judgment as modified is affirmed.

## I. Facts

This case arises out of an underlying negligence action filed by Plaintiff, by and through her next friend and mother, against Defendant and his employer, Delta Motel (Delta), to recover for injuries Plaintiff sustained while staying at the motel. Delta

maintained a liability insurance policy through Insurer, under which both Defendant and Delta were insureds. Defendant and Delta demanded that Insurer defend and indemnify them against Plaintiff's claims. Insurer notified Defendant that it would defend him in the underlying action under a reservation of rights and filed a declaratory judgment action against both Defendant and Delta seeking a judgment that it had no duty to defend or indemnify its insureds under the policy.

Defendant hired a separate attorney ("Defendant's attorney") to represent him in the declaratory judgment action. Through this attorney, Defendant rejected Insurer's defense under a reservation of rights. Defendant warned that if Insurer did not withdraw its reservations of rights and dismiss him from the declaratory judgment action, he would consider entering into a settlement agreement with Plaintiff pursuant to section 537.065.[2]

---

[2] Section 537.065 reads in whole:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any

In response, Insurer offered Defendant a full defense and indemnification and promised to dismiss Defendant from the declaratory judgment action. Despite these assurances, Insurer did not dismiss Defendant and moved for summary judgment against both Defendant and Delta in the declaratory judgment action.

After learning that Insurer had not dismissed Defendant from the declaratory judgment action and had, instead, moved for summary judgment against him, attorneys for Plaintiff and Defendant explored the possibility of their clients entering a settlement agreement pursuant to section 537.065. After negotiations via email and telephone, Plaintiff and Defendant reached a settlement agreement and signed a written instrument purporting to contain the terms of their agreement. The written instrument requires Plaintiff to limit her recovery against Defendant in the negligence action to proceeds from the insurance policy and to an agreed-upon portion of any judgment against the Insurer arising out of its failure to defend and indemnify Defendant.[3] Defendant agreed to assign to Plaintiff a portion of any proceeds Defendant might recover in an action against Insurer and to cooperate with Plaintiff and her attorney in the pursuit of such claims. The written instrument was silent as to whether or how Defendant was to cooperate with Plaintiff in her underlying negligence action.

On the same day Defendant signed the written instrument, Defendant's attorney sent Insurer a letter on Defendant's behalf declaring that Insurer had breached the

judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

[3] The agreement would also permit Plaintiff to satisfy her judgment against any lottery winnings of Defendant or to garnish his wages in the event he should earn more than $50,000 in a year.

contract of insurance by moving for summary judgment against Defendant in the declaratory judgment action after promising to fully defend and indemnify him. Defendant's attorney stated that, as a result of Insurer's breach, his client had entered into a "537 agreement with plaintiff in the underlying action" and instructed the attorney hired by Insurer to represent Defendant in the underlying negligence action to withdraw as counsel in that case.

Shortly after receiving the letter notifying it of the parties' settlement agreement, Insurer dismissed Defendant from the declaratory judgment action without prejudice. Insurer's attorney did not withdraw as counsel for Defendant in the underlying negligence action. When Plaintiff's attorney asked Defendant's attorney what was taking place, the latter indicated that he no longer represented Defendant and that he was surprised that Insurer's attorney had not withdrawn his representation in the negligence action. Plaintiff's attorney then contacted Insurer's attorney to see why he had not withdrawn as Defendant's counsel. Insurer's attorney responded that he intended to continue his representation of Defendant in the underlying negligence action.

Plaintiff filed the subject action against Defendant seeking specific enforcement of the settlement agreement and reformation of the written instrument to reflect the true intentions of the parties. The trial court heard evidence regarding whether the agreement was enforceable and whether it required Defendant to cooperate with Plaintiff in the underlying negligence action. Plaintiff's attorney testified that the parties intended that Defendant would cooperate with Plaintiff in the underlying action by having an uncontested hearing on liability and damages at a bench trial and by precluding Insurer

from controlling the defense in that proceeding. Defendant's attorney testified that he and Plaintiff's attorney negotiated the terms of the agreement via telephone and email, but that he could not recall the specifics of the parties' intentions and that he did not believe that he intended the disputed terms to be part of the agreement. Plaintiff's attorney acknowledged that these terms were not set forth explicitly in the written instrument, but he testified that he had intended to reduce them to writing and that he perhaps "didn't connect the dots" as well as he should have.

As additional evidence of the parties' intent that Plaintiff would have an uncontested hearing on liability and damages in her negligence action against Defendant and that Insurer would not be allowed to control the defense, Plaintiff introduced the letter from Defendant's attorney to Insurer as well as emails between the parties' attorneys expressing their mutual surprise that Insurer's attorney did not withdraw his representation of Defendant after being notified that Defendant had entered into the settlement agreement with Plaintiff. Additionally, Plaintiff's attorney pointed to a section of the instrument stating that the parties "specifically considered" the decisions in *Butters v. City of Independence*, 513 S.W.2d 418 (Mo. 1974), and *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307 (Mo. App. 1993), which both involved a settlement agreement pursuant to section 537.065 in which the insurer was not allowed to control the defense of its insured and the insured cooperated with the plaintiff in the underlying tort action.

The trial court entered judgment in favor of Plaintiff, finding that Plaintiff had proven by clear, cogent, and convincing evidence that the parties mutually agreed that Defendant would not allow Insurer "to have control over the defense" of the underlying

negligence action and that he would cooperate with Plaintiff in that action "either by agreeing to a consent judgment[4] or having an uncontested hearing on liability and damages." The trial court relied on the letter to Insurer asking its attorney to withdraw his representation of Defendant, email communications between the parties' attorneys, the testimony of Plaintiff's attorney, and the written instrument's reference to the *Rimco* and *Butters* cases in reaching its conclusion that, through mutual mistake, these terms were not set forth in the writing and that reformation was a proper remedy. To the extent that Defendant's attorney testified that the parties did not intend to incorporate the disputed terms in the settlement agreement, the trial court explicitly found his testimony not credible.

Defendant appeals. This Court has jurisdiction pursuant to article V, section 10 of the Missouri Constitution.

## II. Standard of Review

This Court will affirm a trial court's judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). This standard applies in all court-tried cases regardless of the burden of proof at trial. *Id.* at 199.

Evidence is substantial if it has any tendency to prove or disprove any fact necessary to sustain the trial court's judgment. *Id.* In deciding whether the trial court's

---

[4] As noted above, both parties on appeal agree that they never intended for Defendant to agree to a "consent judgment."

7

judgment is supported by substantial evidence, appellate courts must view the evidence in the light most favorable to the judgment, defer to the trial court's credibility determinations, and accept as true the evidence and inferences favorable to the judgment, disregarding all contrary evidence. *Id.* at 200. In reaching its judgment, the trial court is free to believe any, all, or none of the evidence presented at trial. *Id.* The trial court here made detailed findings of fact and conclusions of law. Additionally, any issues of fact upon which no specific findings are made are considered as having been found in accordance with the court's judgment. Rule 73.01(c).

### III. Analysis

Defendant argues that the trial court erred in reforming the written instrument because there was no substantial evidence of a mutual mistake that prevented the instrument from accurately reflecting the parties' actual agreement.[5]

"Equity will reform an instrument which, through mutual mistake of the parties, does not accurately set forth the terms of the agreement actually made or which does not incorporate the true prior intentions of the parties." *King v. Riley*, 498 S.W.2d 564, 566 (Mo. 1973); *accord Lunceford v. Houghtlin*, 170 S.W.3d 453, 464 (Mo. App. 2005). Reformation is an extraordinary equitable remedy and should be granted only with great caution and in clear cases of fraud or mistake. *Ethridge v. TierOne Bank*, 226 S.W.3d

---

[5] In his briefs to the court of appeals, Defendant also argued that the trial court's judgment is against the weight of the evidence. A claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014). Because Defendant does not raise an against the weight of the evidence argument here, he has waived it. *Boyer v. Grandview Manor Care Ctr., Inc.*, 793 S.W.2d 346, 347 (Mo. banc 1990).

127, 132 (Mo. banc 2007). A mistake supporting reformation must be mutual, such that both parties "have done what neither intended." *State ex rel. State Highway Comm'n v. Schwabe*, 335 S.W.2d 15, 19 (Mo. 1960). Reformation is not limited to instances of "particular error" in a writing, such as misnaming a party, a mistake in the description of a parcel of land, or a mistake in some other specific term of the written instrument. *King*, 498 S.W.2d at 566. The party seeking reformation need not show "what particular words were agreed upon by the parties as words to be inserted in the instrument." *Id.* "It is sufficient that the parties agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention." *Id.*

The party seeking reformation must show by clear, cogent, and convincing evidence: (1) the existence of an actual, preexisting agreement and (2) a mutual mistake made by the parties to the agreement. *Cardinal Partners, LLC v. Desco Inv. Co.*, 301 S.W.3d 104, 110 (Mo. App. 2010). Whether there has been a mutual mistake is normally a question of fact. *Brown v. Mickelson*, 220 S.W.3d 442, 448 (Mo. App. 2007). Entitlement to reformation may be shown through circumstantial evidence as long as "the natural and reasonable inferences drawn from [that evidence] clearly and decidedly prove the alleged mistake." *Everhart v. Westmoreland*, 898 S.W.2d 634, 638 (Mo. App. 1995). Relevant factors the trial court may consider in determining whether reformation is warranted include "the wording of the contract as signed by the parties, the relationship of the parties, the subject matter of the contract, the usages of the business, the

9

circumstances surrounding the execution of the contract, and its interpretation by the parties." *Id.*

Under the facts here, there was sufficient evidence in the record to support the trial court's finding that, due to mutual mistake, the parties failed to include the disputed terms in the written instrument when the parties had previously agreed to those terms. Plaintiff's attorney testified regarding the parties' intentions in entering the settlement agreement. He stated that it was their mutual intent that Insurer would no longer control the defense in the underlying action and that Defendant would "cooperate in pursuit of all the underlying claims" by having an uncontested hearing on liability and damages. He testified that he meant to reduce these terms to writing when he drafted the written instrument and acknowledged that he perhaps "didn't connect the dots" as well as he should have. Plaintiff's attorney further testified that he discussed these specific terms with Defendant's attorney "several times" and that these intentions were "clear" to Defendant's attorney before the parties signed the written instrument. [6]

---

[6] Plaintiff's attorney mentioned numerous times during his testimony that, although the attorneys discussed and agreed to the disputed terms specifically during negotiations, they also mutually understood that these terms would be included because their agreement was made pursuant to section 537.065. As Defendant correctly points out, the disputed terms are not implied in all section 537.065 agreements. Nothing in the text of section 537.065 requires parties to agree that an insurer may not control the defense of a party to the agreement. Nor does the statute contain any provisions requiring parties to agree to either a consent judgment or an uncontested hearing on liability and damages. It may be true that, as a practical matter, parties frequently include such terms in agreements made pursuant to the statute when, as here, an insurer has denied coverage to its insured. *See, e.g.*, *Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 87 (Mo. App. 2012); *Rinehart v. Anderson*, 985 S.W.2d 363, 365 (Mo. App. 1998); *and Cologna v. Farmers and Merchants Ins. Co.*, 785 S.W.2d 691, 694-95 (Mo. App. 1990). That such terms may be common does not mean that they are inherently implied in all such agreements,

Reformation may properly be granted when "a mutual mistake of law" prevents a written instrument from expressing the parties' actual intentions, which occurs when "parties erroneously suppose that the words used in an instrument are legally effective to secure a certain result." *Schwabe*, 335 S.W.2d at 21; *accord Cardinal Partners, LLC*, 301 S.W.3d at 110. Defendant endeavors to show that only Plaintiff's attorney labored under the mistaken belief that the written instrument was sufficient to secure for Plaintiff an uncontested hearing and the exclusion of Insurer from the defense of her underlying action. Defendant cites large portions of the testimony of his attorney to show that the attorney did not intend for the disputed terms to be part of the agreement. In doing so, Defendant fails to comply with the applicable standard of review. This Court must review the evidence in the light most favorable to the judgment in determining if a party has shown it is entitled to relief by clear, cogent, and convincing evidence. *Ivie,* 439 S.W.3d at 200. All contrary evidence is to be ignored, and appellate courts defer to the trial court's credibility determinations. *Id.* The trial court explicitly found the testimony of Defendant's attorney not credible to the extent he testified that the parties did not agree to the disputed terms.

Furthermore, evidence does not have to be undisputed for a party seeking reformation to prevail. *Leimkuehler v. Shoemaker*, 329 S.W.2d 726, 731 (Mo. 1959). When parties present conflicting evidence, the fact finder must resolve the conflict and make credibility determinations. *CMI Food Serv., Inc. v. Hatridge Leasing*, 890 S.W.2d

---

however, and parties should take care to reduce to writing all terms they intend to include in their agreements under the statute.

11

420, 423 (Mo. App. 1995). Appellate courts defer to those determinations as long as they are supported by competent and substantial evidence. *Id.*

Other evidence supported the trial court's conclusion that both parties intended for the disputed terms to be part of the settlement agreement. Defendant's attorney sent a letter to Insurer the same day Defendant signed the written instrument. In the letter, Defendant's attorney claimed that Insurer had materially breached the contract of insurance and added:

> Because of American Family's material breach of the contract of insurance, my client has decided to now enter into the 537 agreement with the plaintiff in the underlying action in order to protect his personal assets. Additionally, he does not trust American Family or anyone hired by American Family to represent him in the underlying action. Therefore, he is instructing [American Family's attorney] to file a Motion to Withdraw and notice same up for hearing in the [underlying action] as soon as possible.

Attorneys for both Plaintiff and Defendant expressed their disbelief in emails to each other that Insurer's attorney failed to withdraw as counsel from the underlying action after receiving the letter from Defendant's attorney. These letters and emails, which were specifically discussed by the trial court in its judgment,[7] indicate that Defendant's attorney, as well as Plaintiff's, intended for the settlement agreement to include the disputed terms.

---

[7] Defendant's briefs to this Court do not reference the letter from Defendant's attorney to Insurer or the emails exchanged by the parties' attorneys showing their surprise that Insurer's attorney did not withdraw from the underlying negligence action even though the trial court made specific findings of fact regarding this evidence. The standard of review on appeal requires that evidence be viewed in the light most favorable to the judgment. *Ivie*, 439 S.W.3d at 200.

12

The trial court also took note of the provision in the written instrument stating that the parties "specifically considered" *Butters v. City of Independence*, 513 S.W.2d 418 (Mo. 1974), and *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307 (Mo. App. 1993).  In *Butters*, the plaintiff and the defendant in a tort action entered an agreement pursuant to section 537.065 after the defendant's insurer refused to defend and indemnify the defendant without a reservation of rights.  513 S.W.2d at 422.  When the underlying action went to trial, the defendant did not cross-examine the plaintiff's witnesses or contest liability.  *Id.*  Because the insurer refused to fully defend and indemnify its insured, this Court concluded that the insurer had "no right to insist upon controlling the defense" and its insured was free to incur expenses in negotiating and settling the plaintiff's claims.  *Id.* at 424-25.  In *Rimco*, a defendant to a tort action similarly entered into an oral section 537.065 agreement after rejecting its insurer's offer to defend under a reservation of rights.  858 S.W.2d at 308.  The insurer sought to prevent judgment from being entered pursuant to the settlement agreement while it contested coverage in a separate declaratory judgment action.  *Id.*  The court of appeals held that an insurer who does not accept the defense of its insured without reservation "forfeits its right to participate in the litigation and to control the lawsuit."[8]  *Id.* at 309.  Because *Butters* and *Rimco* discuss agreements pursuant to section 537.065 that incorporated one or both of

---

[8] *Butters* and *Rimco* discuss the options of insurers and insureds when coverage of a claim against an insured is in dispute and accurately state that, once an insurer refuses to defend its insured without reservation, the insured is free to enter settlement negotiations with a claimant and to take control of its own defense.  Neither case holds, however, that the terms disputed by the parties here are somehow inherent in every agreement made pursuant to section 537.065.

the disputed terms at issue here, the parties' explicit use of these cases as a "guide" for their agreement supports the trial court's finding that the parties mutually intended to include the disputed terms.

In this case, there was substantial evidence to support the trial court's determination that Plaintiff and Defendant agreed to the disputed terms prior to signing the written instrument and that, due to a mutual mistake, they failed to reduce those terms to writing.

## IV. Conclusion

This case should be a cautionary tale for contract drafters. Although the extraordinary equitable remedy of reformation may be available to the party who can clearly and convincingly show that a mutual mistake prevented a written instrument from effectuating the true intentions of the parties, attorneys should make every effort to reduce all agreed-upon terms to writing so that an agreement, once made, may be immediately and efficiently enforced according to its plain, written terms.

The judgment as modified is affirmed.

_____
Mary R. Russell, Judge

All concur.

14