

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JAMES E. BRADY, III, | ) | |
| | ) | |
| Appellant, | ) | WD79291 |
| | ) | |
| v. | ) | OPINION FILED: February 7, 2017 |
| | ) | |
| PATRICK B. STARKE, AND | ) | |
| PATRICK B. STARKE, ATTORNEY | ) | |
| AT LAW, P.C., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Sandra Midkiff, Judge

Before Special Division: Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

James Brady ("Brady") appeals from the entry of judgment in favor of Patrick Starke

("Starke") and Patrick B. Starke, Attorney at Law, P.C. ("Law Firm") on Brady's claim to

declare a fee-sharing agreement unenforceable, and on Starke's and Law Firm's

counterclaim for breach of contract. Because a valid and enforceable fee-sharing

agreement existed between the parties, we affirm.

## Factual and Procedural Background[1]

Brady and Starke are licensed attorneys in Missouri. Starke has practiced law for over thirty years, while Brady has been admitted to practice law since 2009. From approximately May 2010 until July 2012, both attorneys operated out of the same office building in Blue Springs, Missouri. Starke owns the building and rented office space to Brady for Brady's own law practice, The Brady Law Firm, LLC.

A large, stand-alone sign sits in front of the office building near the property's entrance from the road. The sign reads "Starke Law Offices," and lists the address and a phone number. The phone number belongs to Starke. The door into the building reads "Law Offices," and lists Starke's phone number. The names of other attorneys occupying office space in the building are listed on the door underneath Starke's phone number. Each attorney has the designation "Attorney at Law" below their name, but nothing indicates that the listed attorneys are separate, unaffiliated law offices.[2] This is the only public entrance into the building.

Upon entering the office building, there is a single, shared reception area where a paralegal, Melodie Chrisman ("Chrisman"), would greet clients and visitors for all the attorneys. Chrisman greeted Brady's visitors the same as Starke's visitors. Chrisman answered phone calls for all of the attorneys in the building, including Brady. It was not

---

[1]Because Brady challenges whether substantial evidence supported the trial court's judgment, we "view the evidence in the light most favorable to the judgment, defer to the trial court's credibility determinations, and accept as true the evidence and inferences favorable to the judgments, disregarding all contrary evidence." *Hunter v. Moore*, 486 S.W.3d 919, 925 (Mo. banc 2016).

[2]Brady's name is not depicted on the door in the photograph presented to the trial court because he no longer rents an office in the building. But it was explained that his name was listed on the door when he occupied an office in the building.

uncommon for Brady's clients to call Starke's phone number--the one posted on the sign and door--in order to contact Brady. As with visitors, Chrisman treated callers for Brady the same as she treated callers for Starke.

The rental agreement between Starke and Brady was oral. Under the terms of the agreement, Brady was to pay Starke $500 per month in rent, as well as postage and copying expenses. In addition to his office space and the reception area, Brady enjoyed shared use of Starke's kitchen, conference room, and other common areas.

Starke provided Brady with clerical forms, such as client intake forms and medical authorizations. In fact, Chrisman testified that on one occasion, Brady used a provided medical authorization form and listed "JAMES E. BRADY, III, ATTORNEY AT LAW" in the first paragraph, but referred to "Starke Law Offices" in the paragraph relating to authorization revocation.

Brady hoped that he would receive an overflow of Starke's business by having an office in Starke's building. Starke also wanted to help Brady build his law practice. To that end, Starke passed cases to Brady when he did not have time to pursue them or was otherwise not interested in pursuing them. In such instances, Chrisman or other staff members would call the client to say that Starke could not take their case but that he was referring the case to "a young attorney here in our office." Chrisman testified that she would explain to the client that "[i]f there's a problem, you know, let us know, you can call us back; we just want to make sure that you're happy." Chrisman stated that "[t]hat's kind of the way we addressed all of our clients."

In addition to the rental agreement, Brady and Starke orally agreed to split any attorney's fees earned from the cases they referred to each other. The "generating attorney" would be entitled to 25% of the total fee earned, with the remaining 75% going to the primary attorney. Even after referring a case, however, Starke remained available and responsible to the clients on those cases.

During the time that Brady maintained an office in Starke's building, Laura Ziegler ("Ziegler") came to Starke for representation on a personal injury case. Starke had previously represented Ziegler on several other matters. After reviewing Ziegler's file, Starke decided to have Brady take the lead on the case because Starke had a heavy caseload. Starke met with Ziegler twice before passing the case off to Brady. Starke introduced Ziegler to Brady while Ziegler was in Starke's office. Starke testified that he would have told Ziegler that he was available, and to call him if there was a problem, because he almost always said words to that effect when passing off a client. The trial court found this testimony to be credible.

Brady and Starke discussed Ziegler's case numerous times. Brady sought and received advice from Starke on how to proceed, particularly after the defendant failed to timely answer Ziegler's petition. Starke advised Brady on default judgment proceedings. Starke advised Brady to submit medical evidence at the default judgment hearing and to seek $2 million in damages rather than $1 million. Starke recommended that Brady not attempt to collect the default judgment until after a year passed.

In July 2012, Brady informed Starke that he was moving out of Starke's office space. At this time, the attorneys signed a letter acknowledging and memorializing their pre-

4

existing oral agreement to split fees earned on certain cases 25%-75%. Specifically, the letter stated that Brady would pay Starke 25% of the legal fees earned in two cases, Ziegler and Byron Chaney ("Chaney"), "for [his] involvement." Additionally, Starke disclaimed any interest he might have in the fees earned in a third case. The letter also mentioned rent and expenses owed to Starke, but stated that they could be paid out of the fees earned in the Chaney case. Both attorneys signed the letter. Brady later paid Starke for his portion of the Chaney fees, including an amount for unpaid rent.

Brady and Starke continued discussing Ziegler's case after Brady moved out of Starke's building. Brady shared information about the case with Starke and Starke continued to offer advice to Brady about collecting the default judgment. Brady and Starke met and discussed Ziegler's case on October 31, 2012, the eve of the one-year anniversary of the default judgment. Their collaborative discussions about how best to proceed in collecting the Ziegler judgment continued into the following year.

Brady advised Starke that there was a reasonable chance Ziegler's case would settle at a mediation scheduled in April 2013. Ziegler's case did, in fact, settle as a result of the mediation, generating an attorney's fee in the amount of $380,000. Based on the fee-sharing agreement, Starke was entitled to $95,000 of this fee.

Brady initially held Starke's share of the Ziegler fee in his trust account, but later distributed Starke's share of the fee to himself after filing a petition seeking a declaration that the fee-sharing agreement was unenforceable. Starke and Law Firm filed a counterclaim for breach of contract, *quantum meruit*, and unjust enrichment seeking to recover Starke's share of the Ziegler fee.

5

The parties tried the case to the court, and requested findings of fact and conclusions of law in accordance with Rule 73.01(c).[3] The trial court's judgment included detailed findings and conclusions, and found in favor of Starke and Law Firm on the counterclaim for breach of contract and on Brady's request for a declaratory judgment. The trial court awarded Starke $95,000 in damages, plus pre-judgment interest pursuant to section 408.020 from May 2, 2013.[4] The trial court also awarded post-judgment interest pursuant to section 408.040. Because Starke and Law Firm prevailed on the breach of contract claim, their remaining counterclaims were denied.

This timely appeal followed.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014).

When a claim of error presents a mixed question of law and fact, "the reviewing court applies the same principles articulated above except that it is necessary to segregate the parts of the issue that are dependent on factual determinations from those that are dependent on legal determinations." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc

---

[3]All Rule references are to *Missouri Court Rules, Volume I -- State, 2016* unless otherwise noted.
[4]In stating the pre-judgment interest awarded, the judgment reflects conflicting amounts. The judgment writes out the amount as "Sixteen Thousand Seven Hundred One and Seventy Eight Cents," but states the amount numerically as "$17,701.78." We do not resolve this discrepancy as it has not been raised as an issue on appeal.

6

2012). "Therefore, it is a matter of deferring to the fact-finder in its assessment of the facts and then applying *de novo* review in determining how the law applies to those facts." *Id.*

**Analysis**

Brady raises a single point on appeal. Brady claims that it was error to enforce the fee-sharing agreement with Starke because pursuant to Missouri Rules of Professional Conduct, fee-sharing agreements between lawyers who are not in the same firm are not enforceable absent compliance with Rule 4-1.5(e), and there was no substantial evidence that he and Starke were members of the same firm or that the agreement otherwise complied with Rule 4-1.5(e). We disagree.

Under the Missouri Rules of Professional Conduct, a fee-sharing agreement is enforceable only if certain requirements are met. Rule 4-1.5(e) provides that:

> A division of a fee between lawyers *who are not in the same firm* may be made only if:
>
> (1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
>
> (2) the client agrees to the association and the agreement is confirmed in writing; and
>
> (3) the total fee is reasonable.

(Emphasis added). "[A]n agreement to share attorney fees that does not comply with Rule 4-1.5(e) is unenforceable." *Law Offices of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 425 (Mo. App. S.D. 2006) (quoting *Neilson v. McCloskey*, 186 S.W.3d 285, 287 (Mo. App. E.D. 2005)). However, the requirements of Rule 4-1.5(e) do not apply when the

7

lawyers are in the same "firm." *Welch v. Davis*, 114 S.W.3d 285, 290 (Mo. App. W.D. 2003).

Rule 4-1.0(c) defines the terms "firm" and "law firm":

"Firm" or "law firm" denotes a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization.

The second comment to Rule 4-1.0 further clarifies the terms:

Whether two or more lawyers constitute a firm within Rule 4-1.0(c) can depend on the specific facts. For example*, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in any way that suggests that they are a firm* or conduct themselves as a firm, *they should be regarded as a firm for purposes of the Rules*. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve.

(Emphasis added); s*ee also Welch*, 114 S.W.3d at 290 (holding that two lawyers were in the same firm for purposes of Rule 4-1.5(e)[5] because "they held themselves out to their clients and practiced together as a single, collective business entity").

Although Brady and Starke did not call themselves "partners" in the same law firm, and instead had an agreement to share office space, the trial court found that they presented themselves to the public in a way that suggested they were a firm. The trial court specifically found that "to the general public, there was no visible way to distinguish separate legal entities." Thus, the trial court found that Brady and Starke were in the same

---

[5]*Welch v. Davis*, 114 S.W.3d 285 (Mo. App. W.D. 2003) examined a previous version of Rule 4-1.5(e), but the subsequent changes to the Rule have been minor and do not affect our analysis. *See Vance v. Griggs*, 324 S.W.3d 471, 475 (Mo. App. W.D. 2010).

firm for purposes of Rule 4-1.5(e), and that Rule 4-1.5(e) did not apply to the fee-sharing agreement between Brady and Starke.

Brady contends that there is no substantial evidence to support the trial court's finding that he and Starke were members of the same firm for purposes of Rule 4-1.5(e) because Starke made binding admissions to the contrary, because there was no evidence that the parties ever held themselves out as a single legal business entity, and because the evidence only showed that the attorneys were members of separate firms. "To prevail on the substantial-evidence challenge, [Brady] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie*, 439 S.W.3d at 200. Brady has not sustained this burden.

First, Brady argues that admissions made by Starke in his answer bound Starke, and precluded a finding that Brady and Starke were in the same firm for purposes of Rule 4-1.5(e). Brady relies on Starke's admissions in his answer that he and Brady "were never members of the same law firm," and that neither he nor Starke "represented to clients or the public that [Brady] was a member of [Starke's] law firm."[6]

The trial court's finding that Brady and Starke presented themselves to the public in a way that suggests that they were a firm is not precluded by Starke's admissions. Starke's admissions in his answer, even presuming they bound Starke and the trial court,[7] are not

---

[6]In his Answer, Starke admitted Paragraphs 10, 20, and 21 of Brady's Petition, which stated, respectively, that: (i) Brady and Starke "were never members of the same law firm," (ii) Starke "never represented to Clients or the public that [Brady] was a member [Starke's] law firm," and (iii) Brady "never represented to Clients or the public that [Brady] was a member of [Starke's] firm."

[7]"A defendant is ordinarily bound by his answer and the position taken therein." *Cohen v. Normand Property Assocs.*, 498 S.W.3d 473, 481 (Mo. App. W.D. 2016) (quoting *Peterson v. Medlock*, 884 S.W.2d 679, 684 (Mo. App. S.D. 1994)). "[A]n allegation of fact in an answer upon which the case is being tried is binding on the pleader and for the purpose of the trial such party is precluded from maintaining a contrary or inconsistent position." *Id.* (quoting

9

inconsistent with the trial court's finding that Brady and Starke presented themselves to the public in a way that suggested they were a firm. In fact, Starke's answer denied Paragraph 11 of Brady's petition which asserted that Brady and Starke "never made representations *or otherwise held themselves out to the public or to [c]lients* as members of the same law firm." (Emphasis added).

Second, Brady argues that no evidence supported the trial court's finding that Starke and Brady held themselves out as a single, collective legal business entity or partnership. Brady's contention is flawed. The trial court did not find that Starke and Brady held themselves out as a single, collective legal business entity or partnership. And Brady cites no authority for the proposition that such a finding was required for the trial court to conclude, as it did, that Brady and Starke were in the same firm for purposes of Rule 4-1.5(e). In fact, as the trial court observed, the definition of "law firm" set forth in Rule 4-1.0(c) "envisions situations in which lawyers who are not 'partners' in the traditional sense of the word can nonetheless be affiliated as a 'firm.'"

Third, Brady argues that no evidence supported the trial court's conclusion that Brady and Starke held themselves out as a single firm, and instead the only evidence was

---

*Wehrli v. Wabash R.R. Co.*, 315 S.W.2d 765, 773 (Mo. 1958)). But as to questions of law, the trial court is not bound to a conceded position or precluded from making a contrary or inconsistent finding. *Parr v. Breeden*, 489 S.W.3d 774, 779 (Mo. banc 2016) ("Courts are not bound by stipulations or concessions as to questions of law."); *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917) ("[T]he court cannot be controlled by agreement of counsel on a subsidiary question of law."); *Wells v. Covenant Mut. Ben. Ass'n*, 29 S.W. 607, 609 (Mo. 1895) (holding that no valid agreement could be made with respect to the sufficiency of a petition because that is a question of law); *Aubuchon v. Bender*, 44 Mo. 560, 570 (1869) (determining a question of law "notwithstanding the inadvertent concession of defendant's counsel").

"The rules of professional conduct have the force and effect of judicial decision. Accordingly, Rule 4-1.5 has the force and effect of law in Missouri." *Vance*, 324 S.W.3d at 475 (quoting *Law Offices of Gary Green, P.C. v. Morrissey*, 210 S.W.3d 421, 425 (Mo. App. S.D. 2006)). Thus, the trial court was not bound by Starke's admissions to the extent they address whether Brady and Starke constituted a "firm" or "law firm" for purposes of the Rules of Professional Conduct, a question of law.

10

to the contrary. Brady highlights the evidence which could have supported the conclusion that he and Starke were not in a single firm, and did not represent themselves to be in a single firm, including that Brady merely rented office space from Starke; both had separate listings in the local bar directory; both used individual office forms; Brady and Starke did not advertise together and did not list each other on firm accounts or insurance; and both had separate letterheads, websites, e-mail addresses, and business cards.

Brady's argument ignores our standard of review. Our Supreme Court has made clear "that no contrary evidence need be considered on a substantial-evidence challenge." *Ivie*, 439 S.W.3d at 200. Because we are determining whether substantial evidence supports the trial court's judgment, we "must view the evidence in the light most favorable to the judgment, defer to the trial court's credibility determinations, and accept as true the evidence and inferences favorable to the judgment, disregarding all contrary evidence." *Hunter v. Moore*, 486 S.W.3d 919, 925 (Mo. banc 2016). "In reaching its judgment the trial court is free to believe any, all, or none of the evidence presented at trial." *Id.*

Here, the trial court made extensive findings of fact, pursuant to Rule 73.01(c). "In addition, Rule 73.01(c) provides that 'all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.'" *Ivie*, 439 S.W.3d at 200 (quoting *In re J.A.R.*, 426 S.W.3d 624, 626 (Mo. banc 214)). The trial court made numerous factual findings which constitute substantial evidence that Starke and Brady operated in a manner that suggested to the public that they were a firm. Substantial evidence is evidence that "has any tendency to prove or disprove any fact

11

necessary to sustain the trial court's judgment." *Hunter*, 486 S.W.3d at 925. None of the trial court's specific factual findings are challenged by Brady on appeal.

Here, the trial court found that Brady and Starke shared space in an office building where a single, stand-alone sign out front read "Starke Law Offices," with Starke's phone number underneath. Clients arriving at the "Starke Law Offices" entered through a door marked "Law Offices" that listed the occupying attorneys with no indication that they were unaffiliated. The same phone number on the "Starke Law Offices" sign appeared on the door to the building. A person calling that number would be greeted the same as any other caller before being connected to the appropriate attorney. It was not unusual for Brady's clients to use Starke's phone number to reach Brady. All visitors and clients used the same reception area and were greeted by the same staff. Brady used Starke forms, including medical authorization forms, and on at least one occasion, a medical authorization form used by Brady referenced Starke's Law Firm.

In addition, the trial court found that Starke and Brady met with Ziegler together, and that Starke told Ziegler that although Brady would be the primary attorney on her file, Starke would be there to assist with the case. Starke testified that he always remained available to referred clients in the event that the client had an issue with Brady, including answering or returning client calls when clients could not get ahold of Brady. Chrisman testified that her typical conversations with clients referred to Brady included a representation that "[i]f there's a problem, you know, let us know, you can call us back; we just want to make sure that you're happy." Some clients who had been referred to Brady did, in fact, contact Starke after failing to reach Brady. The trial court specifically found

12

the testimony provided by Chrisman and Starke to be credible. We defer to the trial court's credibility determinations. *Hunter*, 486 S.W.3d at 925.

Based on this evidence, the trial court found that "to the general public, there was no visible way to distinguish separate legal entities." We therefore reject Brady's contention that no substantial evidence supported the conclusion that Brady and Starke presented themselves to the public in a way that suggested that they were a firm.

Because substantial evidence supports the trial court's conclusion that Brady and Starke were in the same firm as contemplated by Rule 4-1.5(e), the trial court did not err in concluding that Rule 4-1.5(e) did not apply to the fee-sharing agreement between Starke and Brady.[8] Given this conclusion, Brady's alternative argument--that no substantial evidence established that the fee-sharing agreement met the requirements of Rule 4-1.5(e) applicable when lawyers are not in the same firm--is rendered moot and need not be addressed.

Brady's point on appeal is denied.

---

[8]We need not address the trial court's reliance on *Beck v. Patton*, 309 S.W.3d 436 (Mo. App. W.D. 2010), for the alternative conclusion that regardless the impression presented to the public, Brady and Starke were in the same firm for purposes of Rule 4-1.5(e) because they had an *ad hoc* partnership based on their agreement to refer cases to one another in order to build one other's businesses; their agreement to share fees; their shared access to client information and pleadings in connection with referred files; their practice of discussing strategies in pending matters; and their substantial collaboration on referred files. Plainly, such evidence would be relevant to establish shared responsibility for a referred matter, one of the three requirements for an enforceable fee-sharing agreement where lawyers are not in the same firm. Rule 4-1.5(e). Whether the same evidence can suffice to establish that lawyers are in the same firm, and thus beyond the scope of Rule 4-1.5(e), is an issue we need not resolve.

## Conclusion

The trial court's judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur